IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | The Honorable Liam O'Grady |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. 1:14-cv-00969 |
| v. ) | |
| ) | |
| ALL ASSETS LISTED IN ATTACHMENT A, ) | |
| AND ALL INTEREST, BENEFITS, AND ASSETS ) | |
| TRACEABLE THERETO, ) | |
| ) | |
| Defendants *in Rem*. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
CLAIMANTS' MOTION TO DISMISS AND/OR STAY
THE VERIFIED COMPLAINT FOR FORFEITURE *IN REM*__**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ........................................................................................................................... 6

I.      THE CLAIMANTS HAVE STANDING TO CHALLENGE FORFEITURE ................... 6

II.     THE CIVIL FORFEITURE COMPLAINT SHOULD BE DISMISSED FOR
        LACK OF SUBJECT-MATTER JURISDICTION ........................................................ 6

        A.      No Federal Statute Recognizes Copyright Infringement Based On
                Extraterritorial Conduct ................................................................................. 7

        B.      No Federal Statute Authorizes Criminal Copyright Infringement
                Prosecution Based On Secondary Liability .................................................... 10

III.    THE CIVIL FORFEITURE COMPLAINT SHOULD BE DISMISSED FOR
        LACK OF PERSONAL JURISDICTION OVER THE PROPERTY AT ISSUE ........... 14

IV.     THE CIVIL FORFEITURE COMPLAINT SHOULD BE DISMISSED FOR
        FAILURE TO STATE A CLAIM ............................................................................... 17

        A.      The Government Has Failed To State A Claim For Forfeiture Because It
                Has Not Properly Alleged Criminal Copyright Infringement As A
                Predicate ....................................................................................................... 18

        B.      The Government's Requested Remedy Of Civil Forfeiture Is Facially
                Disconnected, In Any Event, From The Underlying Crimes Alleged ............. 23

                1.      The Government Fails to Plead that the Defendant Assets Are
                        Proceeds of Criminal Copyright Infringement ................................... 23

                2.      The Government Fails to Plead that the Defendant Assets Are
                        Traceable to Criminal Copyright Infringement. ................................. 25

                3.      The Government Fails to Plead that the Defendant Assets Are
                        Proceeds Traceable to Money Laundering .......................................... 27

V.      IF THE GOVERNMENT'S COMPLAINT IS NOT DISMISSED AS A
        MATTER OF LAW, FURTHER PROCEEDINGS SHOULD BE STAYED ................. 29

# TABLE OF AUTHORITIES

**Page**

## Cases

*ALS Scan, Inc. v. RemarQ Communities, Inc.*,
239 F.3d 619 (4th Cir. 2001) ........................................................................9

*Al Shimari v. CACI Premier Tech., Inc.*,
758 F.3d 516 (4th Cir. 2014) ........................................................................7

*In re Bashas' Inc.*,
2013 WL 1932820 (D. Ariz. May 8, 2013) ...............................................19

*BC Tech., Inc. v. Ensil Int'l Corp.*,
464 Fed. Appx. 689 (10th Cir. 2012) ........................................................21

*Bouchat v. Baltimore Ravens Football Club, Inc.*,
346 F.3d 514 (4th Cir. 2003) ......................................................................25

*Burleson v. Toback*,
391 F. Supp. 2d 401 (M.D.N.C. 2005) .......................................................16

*Medical Supply Chain, Inc. v. Neoforma, Inc.*,
419 F. Supp. 2d 1316 (D. Kan. 2006) .........................................................22

*Polar Bear Products v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) ......................................................................25

*United States v. Mekjian*,
505 F.2d 1320 (5th Cir. 1975) ....................................................................22

*United States v. Real Prop. & Premises*,
657 F. Supp. 2d 1060 (D. Minn. 2009) .......................................................28

*Cleveland v. United States*,
531 U.S. 12 (2000) ......................................................................................29

*CoStar Group, Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ........................................................................9

*Cole v. John Wiley & Sons, Inc.*,
2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012).............................................20

*Columbia Pictures Indus., Inc. v. Fung*,
2009 WL 6355911 (C.D. Cal. Dec. 21, 2009).............................................8

*Connally v. General Construction Co.*,
269 U.S. 385 (1926) ....................................................................................12

*Dash v. Mayweather*,
731 F.3d 303 (4th Cir. 2013) ......................................................................24

*Dowling v. United States*,
   473 U.S. 207 (1985) ..................................................................................................11, 13

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ...........................................................................................25

*Elmo Shropshire v. Canning*,
   2011 WL 90136 (N.D. Cal. Jan. 11, 2011) ..........................................................................8

*Harrods Ltd. v. Sixty Internet Domain Names*,
   302 F.3d 214 (4th Cir. 2002) .............................................................................................16

*Home Design Services, Inc. v. J.F. Schoch Building Corp.*,
   2012 WL 442008 (E.D. Va. Feb. 10, 2012) ........................................................................20

*Kiobel v. Royal Dutch Petroleum Co.*,
   133 S. Ct. 1659 (2013) .........................................................................................................7

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
   731 F.2d 909 (D.C. Cir. 1984) ...........................................................................................14

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ...........................................................................................................30

*Levinson v. Massachusetts Mutual Life Insurance Co*,
   2006 WL 3337419 (E.D. Va. Nov. 9, 2006) .......................................................................29

*Liparota v. United States*,
   471 U.S. 419 (1985) ...........................................................................................................10

*Los Angeles News Serv. v. Reuters Television International, Ltd.*,
   149 F.3d 987 (9th Cir. 1998) ...............................................................................................8

*MGM Studios, Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ...........................................................................................................10

*Negron-Bennett v. McCandless*,
   2013 WL 5552236 (E.D. Va. Oct. 8, 2013) ........................................................................23

*Online Policy Group v. Diebold, Inc.*,
   337 F. Supp. 2d 1195 (N.D. Cal. 2004) ..............................................................................20

*Paragon Services v. Hicks*,
   843 F. Supp. 1077 (E.D. Va. 1994) ....................................................................................19

*Pettibone v. United States*,
   148 U.S. 197 (1893) .............................................................................................................7

*Plymouth Cnty. Retirement Association v. Primo Water Corp.*,
   966 F. Supp. 2d 525 (M.D.N.C. 2013) ...............................................................................29

*R.M.S. Titanic, Inc. v. Haver*,
   171 F.3d 943 (4th Cir. 1999) ................................................................................. 14, 15, 17

*R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel ("R.M.S. Titanic II")*,
   435 F.3d 521 (4th Cir. 2006) ............................................................................... 15

*Religious Technology Center v. Netcom On-Line Communication Services, Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ..................................................................... 10

*Rundquist v. Vapiano SE*,
   798 F. Supp. 2d 102 (D.D.C. 2011) ........................................................................7

*Shaffer v. Heitner*,
   433 U.S. 186 (1977) ............................................................................................. 14

*Sony Corp. of America v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ................................................................................... 10, 11, 25

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
   24 F.3d 1088 (9th Cir. 1994) ..................................................................................7

*Tire Engineering & Distribution, LLC v. Shandong Linglong Rubber Co.*,
   682 F.3d 292 (4th Cir. 2012) ..................................................................................7

*United  States, ex. Rel. Garst v. Lockheed-Martin Corp.*,
   328 F.3d 374 (7th Cir. 2003) ................................................................................ 22

*United States v. $6,190.00 in U.S. Currency*,
   581 F.3d 881 (9th Cir. 2009) ................................................................................ 10

*United States v. $8,221,877.16 in U.S. Currency*,
   330 F.3d 141 (3d Cir. 2003) ................................................................................. 18

*United States v. $1,399,313.74 in U.S. Currency*,
   591 F. Supp. 2d 365 (S.D.N.Y. 2008) ................................................... 23, 24, 26, 28

*United States v. $15,270,885.69*,
   2000 WL 1234593 (S.D.N.Y. Aug. 31, 2000) ....................................................... 18

*United States v. 998 Cotton St., Forsyth Cnty., N.C.*,
   2013 WL 1192821 (M.D.N.C. Mar. 22, 2013) ...................................................... 27

*United States v. Alerre*,
   430 F.3d 681 (4th Cir. 2005) ..........................................................................27, 28

*United States v. All Assets Held at Bank Julius Baer & Co.*,
   571 F. Supp. 2d 1 (D.D.C. 2008) ......................................................................... 18

*United States v. All Assets Held at Bank Julius Baer & Co.*,
   959 F. Supp. 2d 81 (D.D.C. 2013) ..........................................................................6

*United States v. All Funds on Deposit in any Accounts Maintained in Names of
   Meza or De Castro*,
   63 F.3d 148 (2d Cir. 1995) ................................................................................... 15

*United States v. Christo*,
   129 F.3d 578 (11th Cir. 1997) .............................................................................. 28

*United States v. Cone*,
714 F.3d 197 (4th Cir. 2013) ....................................................................................11, 13

*United States v. Daccarett*,
6 F.3d 37 (2d Cir. 1993)....................................................................................................18

*United States v. Genova*,
333 F.3d 750 (7th Cir. 2003) .....................................................................................24, 27

*United States v. Gotti*,
457 F. Supp. 2d 411 (S.D.N.Y. 2006) ..............................................................................28

*United States v. Lanier*,
520 U.S. 259 (1997) ..........................................................................................................11

*United States v. Mankarious*,
151 F.3d 694 (7th Cir. 1998) ...........................................................................................28

*United States v. Mondragon*,
313 F.3d 862 (4th Cir. 2002) ............................................................................... 18, 21, 27

*United States v. One 1998 Tractor*,
288 F. Supp. 2d 710 (W.D. Va. 2003) ..............................................................................27

*United States v. One 2003 Mercedes Benz CL500*,
2013 WL 5530325 (D. Md. Oct. 3, 2013) .........................................................................27

*United States v. One Gulfstream G-V Jet Aircraft*,
941 F. Supp. 2d 1 (D.D.C. 2013)........................................................23, 24, 25, 27, 28

*United States v. One Lincoln Navigator 1998*,
328 F.3d 1011 (8th Cir. 2003) ...........................................................................................6

*United States v. Pole No. 3172, Hopkinton*,
852 F.2d 636 (1st Cir. 1988)............................................................................................18

*United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal.*,
385 F.3d 1187 (9th Cir. 2004) ...........................................................................................6

*United States v. Santos*,
553 U.S. 507 (2008) ..........................................................................................................14

*United States v. Winstead*,
708 F.2d 925 (4th Cir. 1983) ...........................................................................................22

*Viacom International, Inc. v. YouTube, Inc.*,
676 F.3d 19 (2d Cir. 2012)................................................................................................19

*Walden v. Fiore*,
134 S. Ct. 1115 (2014) ......................................................................................................16

**<u>Statutes</u>**

17 U.S.C. § 504 ................................................................................................................ 24

17 U.S.C. § 506 ........................................................................................... 11, 13, 19, 21, 22

17 U.S.C. § 507 ........................................................................................................... 20, 21

17 U.S.C. § 512 .................................................................................................................. 4

28 U.S.C. § 1355 ......................................................................................................... 7, 15

18 U.S.C. § 2 .............................................................................................................. 13, 21

18 U.S.C. § 2323 ........................................................................................................ 13, 19

18 U.S.C. § 981 ............................................................................................. 13, 19, 23, 29

18 U.S.C. § 983 ................................................................................................................ 27

**<u>Rules</u>**

Federal Rule of Civil Procedure 8 ................................................................................... 18

Federal Rule of Civil Procedure 9 ................................................................................... 29

Federal Rule of Civil Procedure 12 .......................................................................... 2, 6, 30

Supplemental Rule G ............................................................................................. 2, 18, 19

## INTRODUCTION

Nearly three years ago, the United States Government effectively wiped out Megaupload Limited, a cloud storage provider, along with related businesses, based on novel theories of criminal copyright infringement that were offered by the Government *ex parte* and have yet to be subjected to adversarial testing.   Thus, the Government has already seized the criminal defendants' websites, destroyed their business, and frozen their assets around the world—all without benefit of an evidentiary hearing or any semblance of due process.   Without even attempting to serve the corporate defendants per the Federal Rules of Criminal Procedure, the Government has exercised all its might in a concerted, calculated effort to foreclose any opportunity for the defendants to challenge the allegations against them and also to deprive them of the funds and other tools (including exculpatory evidence residing on servers, counsel of choice, and ability to appear) that would equip a robust defense in the criminal proceedings.

But all that, for the Government, was not enough.   Now it seeks to pile on against ostensibly defenseless targets with a parallel civil action, seeking civil forfeiture, based on the same alleged copyright crimes that, when scrutinized, turn out to be figments of the Government's boundless imagination.   In fact, the crimes for which the Government seeks to punish the Megaupload defendants (now within the civil as well as the criminal realm) do not exist.   Although there is no such crime as secondary criminal copyright infringement, that is the crime on which the Government's Superseding Indictment and instant Complaint are predicated. That is the nonexistent crime for which Megaupload was destroyed and all of its innocent users were denied their rightful property.   And that is the nonexistent crime for which the Government would now strip the criminal defendants, and their families, of all their assets.

In resorting to civil forfeiture, the Government veers further astray.   Notably, the Government is going after foreign assets that lie beyond reach of the Court's *in rem* jurisdiction,

based on allegations that surpass the outer limit of the law and are in any event divorced from the foreign assets at issue.  For the reasons stated herein, Claimants respectfully contend that the Government's instant Complaint is jurisdictionally defective and otherwise without merit such that the Court should dismiss it as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (6) and Supplemental Rule G.

Alternatively, to the extent the Court might permit (at least for the time being) the Government's Complaint to remain pending, Claimants respectfully request that the Court at least stay the instant action just as it has stayed other parallel civil actions involving the same interested parties.  In no event can these Claimants, whose assets are directly at issue, fairly be expected to litigate through civil proceedings, including what is sure to be extensive discovery, while their assets remain frozen and critical evidence remains beyond their reach.  Stated simply, the Government should not be permitted to pummel Megaupload and its individual principals via civil forfeiture proceedings after restraining their assets and disabling their defense, *ex parte*, under criminal auspices, under these same theories.

## BACKGROUND

Founded in 2005, Megaupload provided cloud-storage services, which affords collaborators in different remote locations shared online access to materials.  Prior to being destroyed in January of 2012, Megaupload's primary business, Megaupload.com, was a commercial website that offered a popular Internet-based storage platform for customers ranging from large businesses to individuals.

Any Internet user who used the Megaupload.com website could upload a computer file. *See* Verified Complaint for Forfeiture *In Rem* ("Compl.") ¶ 18 (July 29, 2014) (Dkt. 1).  Using software methods for data management that are standard among other cloud-storage providers and many businesses that rely on efficient data storage, Megaupload was able to reduce the

capacity needed to store hundreds of millions of files, many of which were duplicates. When a file is uploaded to storage, such a data management system employs automated processes to generate an identifier, called an "MD5 hash," from the contents of the file. *See USA v. Kim Dotcom, et al.*, Crim. No. 1:12-cr-3 ("Sup. Ind."), ¶ 23 (Feb. 16, 2012) (Dkt. 34).[1] Two identical files uploaded by two different users would generate the same MD5 hash. When duplication appeared through "the same MD5 hash," Megaupload would retain only one instance of the file, and would generate a different link for each individual user, called a Uniform Resource Locator ("URL"). Sup. Ind. ¶ 23. Each user's link was unique. One user might choose to keep his unique link private; another user might wish to share his link with a close friend or family member by way of an e-mail; and another user might make it more widely available by embedding it in a webpage. End users made these choices; Megaupload simply stored their files.

Megaupload's income was derived primarily from two sources: premium subscriptions and online advertising. Sup. Ind. ¶ 4; Compl. ¶ 37. Premium subscriptions could be purchased for as little as a few dollars per day or as much as $260 for life. Compl. ¶ 37. Premium users who paid the subscription fee enjoyed better and faster access. *See id.* ¶ 38. They were also entitled to longer-term file storage on Megaupload's cloud system. *See* Sup. Ind. ¶ 7. Subscription fees collected during the company's existence were estimated to exceed $150 million, whereas receipts from online advertising on Megaupload.com and affiliated sites were estimated to total a fraction of that, somewhere above $25 million. *See id.* ¶ 4.

As with any cloud-storage service, or, for that matter, online service of any kind, Megaupload was susceptible to misuse by some customers. Any service that enables users to upload and share digital files across the Internet might be used to infringe underlying copyrights.

---

[1] The Government's Complaint incorporates the Superseding Indictment by reference. *See* Compl. ¶ 16.

To address this, Megaupload instituted several measures to comply with safe-harbor provisions, including those for example of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), and to prevent misuse of the service.  To begin with, Megaupload required each user to accept its terms of use before uploading any file to the site.  These terms included a prohibition against uploading any digital material or files for which the user did not own the copyright or was not authorized to have and maintain the files.  Additionally, Megaupload cooperated with copyright owners by adhering to the "notice and takedown" procedures described in DMCA section 512(c)(3).  *See* 17 U.S.C. § 512(c)(3).  By October 15, 2009, Megaupload had also designated an agent to receive notices from copyright owners, as described in 17 U.S.C. § 512(c)(2).  *See* Sup. Ind. at 10, ¶ 21 n.1.  Accordingly, upon receipt from a copyright owner of a signed, written notification credibly identifying the presence of an allegedly infringing work, Megaupload as a matter of course would expeditiously remove or disable access to the infringing URL.  And it systematically did so countless times.  Megaupload also adopted measures that went beyond compliance with DMCA's safe-harbor provisions.  For example, Megaupload negotiated with numerous major copyright holders or their agents—including the Recording Industry Association of America, Disney, Warner Brothers, NBC, and Microsoft—to allow them access to remove directly, without the oversight or involvement of Megaupload, an active link to material they believed infringed their copyrights.  *See id.* ¶ 22.  This enhanced access enabled such parties to protect their copyrights without need for formal take-down notices under the DMCA.

Notwithstanding the criminal defendants' efforts to prevent infringement and to comply with the DMCA's safe-harbor provisions, on January 5, 2012 the Government indicted Megaupload, its founder, Kim Dotcom, and six others in what the Government calls one of the

largest criminal copyright cases ever brought by the United States.  The Government thereafter superseded the Indictment on February 16, 2012.

The Superseding Indictment seeks criminal forfeiture of "at least" $175 million.  Sup. Ind. ¶ 114.  This represents the total revenues generated by Megaupload during its entire corporate existence.  *Id.* ¶ 72.  Thus, the premise of the Government's criminal forfeiture request is that Megaupload never earned a non-criminal penny—whether, say, from a non-infringing use of its service, or from use that occurred outside the United States, or even from an otherwise infringing use that occurred within a statutory safe harbor or without requisite criminal intent.

Upon securing the initial Indictment, the United States petitioned this Court *ex parte* for a restraining order authorizing the pretrial seizure of all of the criminal defendants' assets.  This Court granted the United States' request on January 10, 2012 and entered a restraining order authorizing pretrial seizure of all assets owned by the criminal defendants.  Beginning on January 18, 2012, pursuant to this Court's restraining order, the United States and foreign governments around the world restrained the assets, including over $67 million in liquid assets, belonging to Megaupload and the other criminal defendants in multiple jurisdictions, including but not limited to New Zealand and Hong Kong.

With the company destroyed and the criminal defendants in limbo, the Government now requests *civil* forfeiture as to the same assets that are the subject of the Superseding Indictment's criminal forfeiture allegations.  The Government, as ever, is overreaching.  The Claimants who have a possessory interest in the defendant property—at least one of whom, Mona Dotcom (the estranged wife of Kim Dotcom), is not a defendant in the criminal prosecution—are all foreign citizens and residents, and all of the property at issue remains in New Zealand and Hong Kong, subject to ongoing proceedings before those sovereigns' courts.  Compl. ¶¶ 10-15, 43-86.

# ARGUMENT

## I.     THE CLAIMANTS HAVE STANDING TO CHALLENGE FORFEITURE

Any person with an interest in the defendant property has standing to file a claim.  Supp. R. G(5)(a).  After the Government filed its Verified Complaint for Forfeiture *In Rem* (Dkt. 1), the eight Claimants[2] submitted verified claims regarding the assets to be seized, (Dkt. 3-9, 14).  Even while subject to foreign asset freezes, the *in rem* defendants retain obvious interests in the properties.  *See, e.g., United States v. All Assets Held at Bank Julius Baer & Co.*, 959 F. Supp. 2d 81, 101 (D.D.C. 2013)  ("That the funds are not presently within Eurofed's control—being temporarily frozen . . .—hardly diminishes Eurofed's clear possessory relationship to those funds.").  Through their verified claims, the eight claimants have established their standing to contest forfeiture, and accordingly may move to dismiss under Federal Rule of Civil Procedure 12(b).  *See* Supp. R. G(8)(b)(i); *see also, e.g., United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal.*, 385 F.3d 1187, 1191 (9th Cir. 2004); *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003).

## II.    THE CIVIL FORFEITURE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION

In seeking civil forfeiture, the Government relies on allegations that fall categorically outside the lines of the conduct proscribed by federal statute and, thus, beyond the subject-matter jurisdiction conferred by same.   Specifically, the Government bases its Complaint on extraterritorial conduct that is altogether beyond the reach of U.S. copyright law and this Court's jurisdiction.  It also bases it on notions of secondary criminal copyright liability that the statute places out of bounds.  Because federal law does not recognize the Government's action, this

---

[2]     The Claimants are: Finn Batato, Bram Van Der Kolk, Julius Bencko, Mathias Ortmann, Sven Echternach, Mona Dotcom, Kim Dotcom, and the businesses (Megaupload Limited, Megapay Limited, Vestor Limited, Megamedia Limited, and Megastuff Limited).

federal court lacks subject-matter jurisdiction. *See, e.g.,* 28 U.S.C. § 1355; *Pettibone v. United States*, 148 U.S. 197, 203 (1893) ("The courts of the United States have no jurisdiction over offenses not made punishable by the constitution, laws, or treaties of the United States.").

### A.    No Federal Statute Recognizes Copyright Infringement Based On Extraterritorial Conduct

The jurisdictional scope of the Copyright Act is limited to domestic conduct; therefore, the Government's allegations fall outside this Court's subject-matter jurisdiction to the extent they concern foreign exploitation of copyrighted works.   "[T]he presumption against extraterritorial application. . . provides that '[w]hen a statute gives no clear indication of an extraterritorial application, it has none[.]'" *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013) (citation omitted); *see also Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 528 (4th Cir. 2014) ("the presumption against extraterritorial application bars the exercise of subject-matter jurisdiction").  Consistent with that "presumption," it is an "undisputed axiom that United States copyright law has no extraterritorial application." *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1093 (9th Cir. 1994) (*en banc*) (internal quotation omitted); *see also Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 306 (4th Cir. 2012).  Any "exploitation" of a copyrighted work occurring outside the United States is not "infringement" at all, and not something a U.S. court can consider.  *Subafilms*, 24 F.3d at 1098 ("United States copyright laws do not reach acts of infringement that take place entirely abroad.").  As one district court acknowledged, a court "lacks subject-matter jurisdiction to hear" copyright claims where a plaintiff fails to allege that a defendant "took any predicate act of infringement within the United States." *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 125-26 (D.D.C. 2011).  With respect to Megaupload's criminal prosecution and, in particular, this civil asset forfeiture action, the Government has taken no account of these established bounds.

Because the Government's Complaint improperly grasps for assets derived from extraterritorial conduct, it falls outside the subject-matter jurisdiction of this Court.

"For the Copyright Act to apply, 'at least one alleged infringement must be completed entirely within the United States.'" *Elmo Shropshire v. Canning*, 2011 WL 90136, at *3 (N.D. Cal. Jan. 11, 2011) (quoting *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990-91 (9th Cir. 1998)); *see also Columbia Pictures Indus., Inc. v. Fung*, 2009 WL 6355911, at *8 (C.D. Cal. Dec. 21, 2009) *aff'd in part as modified*, 710 F.3d 1020 (9th Cir. 2013) (plaintiffs must show "that United States users either uploaded or downloaded copyrighted works").  Tellingly, the Complaint and the Superseding Indictment together fail to identify a single instance in which an act of infringement—particularly an unauthorized upload or download—occurred entirely within the United States.

Instead, the Complaint plainly accuses foreign activities that fall outside the scope of the Copyright Act.  The Government describes Megaupload as "an international criminal enterprise," Compl. ¶ 2, and "a worldwide criminal organization," *id*. ¶ 16.  Other allegations reference foreign citizenships, foreign company registrations, foreign employees, foreign bank accounts, foreign assets, and computer servers located "around the world."  *See id*. ¶¶ 7-17. Indeed, the reality is that Megaupload's activities—its users, its operations, its uploadings, and its downloadings—spanned the world at all relevant times.  Yet the Complaint is seeking forfeiture without specifying the location of any infringement or confining itself to U.S. borders. *See id*. ¶ 93.  The Government has thus failed to tie the assets it targets for civil forfeiture specifically to any act of criminal copyright infringement that happened here.

The Superseding Indictment likewise transcends territoriality without regard for the limits of federal law.  Like the Complaint, the Superseding Indictment emphasizes Megaupload's

"worldwide" scope, Sup. Ind. ¶ 1, and describes Megaupload's functions, traffic, and users in reference to the entire worldwide Internet, *id*. ¶¶ 3, 27, 57-72.   The Superseding Indictment studiously avoids describing infringement in terms of U.S. geography; to the contrary, it repeatedly highlights extraterritorial conduct.   The Superseding Indictment refers to content "reproduced on and distributed from computer servers" in "France and the Netherlands." (*id*. ¶ 56), alleges that a majority of Megaupload's servers were located outside the United States, *see id*. ¶¶ 39-41, and lists as exemplary "bad" users those who uploaded primarily Vietnamese and Italian, not American, content, *see id*. ¶ 73(v).   The Court lacks subject-matter jurisdiction to entertain claims based on such extraterritorial conduct.

Although the Complaint and Superseding Indictment plead the existence of Megaupload servers in the United States, Compl. ¶ 23; Sup. Ind. ¶¶ 26, 39, 40, alleging the mere presence of data servers here by no means states a case that direct infringement took place here.   *See, e.g., CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549-50 (4th Cir. 2004) (holding that direct infringement requires more than "mere ownership of a machine used by others to make illegal copies" and that there "must be actual infringing conduct[.]"); *see also ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619, 622 (4th Cir. 2001) ("'As to direct infringement, liability is ruled out for passive, automatic acts engaged in through a technological process initiated by another.'") (quoting H.R. Rep. No. 105-551(I), 1998 WL 414916, at *11 (1998)).   It is telling that the Superseding Indictment omits any allegation to the effect that any specific user, much less any of the criminal defendants, chose to upload or download any specific infringing work from within the United States.   *See, e.g.* Sup. Ind. ¶¶ 30, 33-38, 55, 73(k), 73(v), 73(y), 73(ee), 73(uu), 73(fff), 73(qqq), 73(www), 73(xxx), 73(yyy), 73(aaaa), 73(gggg), 73(aaaaa), 73(bbbbb), 73(jjjjj), 73(kkkkk), 73(rrrrr).   Thus, although the Complaint alleges that Kim Dotcom

"personally distributed a link to a copy of a copyrighted work on, and has received at least one infringing copy of a copyrighted work from, the Mega Sites," Compl. ¶ 7, the Complaint never alleges *where* that occurred.   Nor does the Complaint allege the location of any specific infringement by Batato (*id*. ¶ 10), Bencko (*id*. ¶ 11), Echternach (*id*. ¶ 12), Ortmann (*id*. ¶ 13), Nomm (*id*. ¶ 14), or Van der Kolk (*id*. ¶ 15).   By omitting any allegation of copyright infringement that occurred in the United States, the Complaint falls short of implicating the subject-matter jurisdiction of a United States court.

### B.   No Federal Statute Authorizes Criminal Copyright Infringement Prosecution Based On Secondary Liability

The Government's Complaint is jurisdictionally defective for another reason:  It rests predominantly on theories of secondary copyright infringement (*i.e.*, according to which a defendant may be liable for the infringing acts of another) that find no place under the criminal statute invoked.  *See* Compl. ¶ 17-24, 26-33, 93; Sup. Ind. ¶¶ 5, 21, 57, 64, 65, 69, 72, 73(g). The Government cannot establish subject-matter jurisdiction, however, unless it pleads "that the assets in question are traceable to a violation of an Act of Congress."  *See United States v. $6,190.00 in U.S. Currency*, 581 F.3d 881, 885 (9th Cir. 2009).

The Supreme Court has recognized that, in the *civil* context, secondary copyright infringement liability may obtain based on uncodified "common law" doctrines.[3]  *See MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 937 (2005).  Federal crimes, in contrast, are "solely creatures of statute."  *Liparota v. United States*, 471 U.S. 419, 424 (1985) (citation

---

[3]   The Complaint's allegations would not even satisfy the civil standards for secondary infringement, for cloud-storage technology is shielded from civil liability by the *Sony* doctrine, which forbids imputing liability in the context of dual-use technologies.  *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).  Likewise, online service providers deserve protection against civil liability that is based on theories of constructive notice.  *See Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995).

omitted).   Congress rather than the courts must establish a crime—and must provide express warning thereof.  *See, e.g.*, *Dowling v. United States*, 473 U.S. 207, 213-214 (1985) ("It is the legislature, not the Court, which is to define a crime") (quoting *United States v. Wilberger*, 5 Wheat. 76 (1820)); *see also United States v. Lanier*, 520 U.S. 259, 267 n.6  (1997) ("Federal crimes are defined by Congress, not the courts . . ."). For this reason, "when assessing the reach of a federal criminal statute, [courts] must pay close heed to language, legislative history, and purpose in order strictly to determine the scope of the conduct the enactment forbids." *Dowling*, 473 U.S. at 213; *see also United States v. Cone*, 714 F.3d 197, 206 (4th Cir. 2013) ("In interpreting a criminal statute, we must be certain that its language clearly identifies the act which is rendered a trespass of the law.") (internal quotations omitted).

In fact, there is no such crime.  Strikingly, the criminal copyright infringement statute, 17 U.S.C. § 506(a), says nothing whatsoever about secondary liability. *See, e.g.*, *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984) ("The Copyright Act does not expressly render anyone liable for infringement committed by another.").  The statute does not state that criminal liability can be predicated upon theories of secondary liability, nor does it contemplate that the reach of criminal liability is to be coextensive with civil liability.[4]   Because the Government's proposed theory of secondary criminal copyright infringement is not codified, it is unknown to federal law—and it is no basis for this Court to assert jurisdiction.

Indeed, a theory of secondary criminal copyright infringement or any species thereof, including aiding and abetting through cloud storage case, would be unconstitutional under the void-for-vagueness doctrine.  "A penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that

---

[4]   No other federal intellectual property regime allows for criminal secondary liability.

does not encourage arbitrary and discriminatory enforcement." *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926).  If the Government's theory takes hold, then ordinary people and legal scholars alike will be left guessing where civil secondary copyright infringement ends and criminality begins, particularly in an era when automated file transactions and "foot faults" faced by high-volume providers of online services are routine.

What is more, even in the civil context, Congress declined to codify this theory of copyright liability.  In 1998, prior to enacting the DMCA, Congress studied the issue of secondary liability for Internet service providers.  While acknowledging burgeoning caselaw addressing service providers' secondary civil liability for copyright infringement, "[r]ather than embarking upon a wholesale clarification of these doctrines, the Committee decided to leave current law in its evolving state and, instead, to create a series of 'safe harbors' for certain common activities of service providers."  S. Rep. No. 105-190, 1998 WL 239623, at *19 (1998).

The decision to create safe harbors, rather than to codify secondary liability, was part of an ongoing effort to "ensur[e] an appropriate balance between the interests of copyright owners and information users" and to adopt provisions that are "technology neutral[.]" H.R. Rep. No. 105-551 (II), 1998 WL 414916, at *24 (1998).  Congress envisioned that its statutory safe harbors would afford needed comfort and certitude in the face of the evolving law by "protect[ing] qualifying service providers from liability for all monetary relief for direct, vicarious, and contributory infringement." S. Rep. No. 105-190, 1998 WL 239623, at *20 (emphasis added).  Thus, Congress not only declined to codify secondary liability, but further expressed its intention to protect service providers against even "monetary relief" in the civil context:  it follows *a fortiori* that Congress did not want secondary copyright infringement to serve as a trigger for *criminal punishment*.  The Government's secondary criminal theory finds

no traction "without rewriting the statute:  an act the Congress, but not this court, can undertake." *See Cone*, 714 F.3d at 207 (holding that Government's novel theory of counterfeit trademark trafficking could not be a basis for criminal prosecution).

Seeking another back door through which to prosecute the Megaupload defendants for alleged crimes they did not directly commit, the Government tries to combine the criminal copyright statute, 17 U.S.C. § 506, with the general aiding and abetting statute, 18 U.S.C. § 2.  *See* Sup. Ind. Counts Four, Five, Six, Seven, and Eight.  But that is no conceivable basis for criminal prosecution, much less resulting forfeiture.  Congress *specifically removed* from the *Copyright Act* language about aiding and abetting criminal infringement.  *See* Irina D. Manta, *The Puzzle of Criminal Sanctions for Intellectual Property Infringement*, 24 Harv. J.L. & Tech. 469, 481 (2011) ("Several years later, countering what had been a trend of expansion in the area of criminal sanctions, the Copyright Act of 1976 eliminated the provisions for aiding and abetting . . .")  Judicial reinsertion of the deleted language, particularly in the *criminal* context, would chill innovation, creating the prospect of criminal sanctions despite, for instance, *compliance* with express DMCA safe harbors.  Even assuming *arguendo* that such a criminal prosecution  might ever be permitted, neither 18 U.S.C. § 2323 nor 18 U.S.C. § 981 authorizes civil asset forfeiture for proceeds traceable to aiding and abetting criminal conduct.  There is, accordingly, no jurisdiction for entertaining a request for civil forfeiture as pleaded here.

In the context of copyright law in particular, "the deliberation with which Congress . . . has addressed the problem of copyright infringement for profit, as well as the precision with which it has chosen to apply criminal penalties in this area, demonstrates anew the wisdom of leaving it to the legislature to define crime and prescribe penalties." *Dowling*, 473 U.S. at 228. This Court should not construe Congress's continued declination to codify any form of

secondary infringement as a twisted authorization for criminal prosecution, or for civil forfeiture tied to same.  Allowing this theory to proceed would not only usurp the Legislature's prerogative, but also violate the rule of lenity, which "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."  *United States v. Santos*, 553 U.S. 507, 514 (2008). Because the defendant assets are allegedly the proceeds of a "crime" that plainly is not and has never been a crime under federal statute, the forfeiture Complaint should be dismissed at the threshold for lack of federal subject-matter jurisdiction.

## III.   THE CIVIL FORFEITURE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER THE PROPERTY AT ISSUE

United States courts have *in rem* jurisdiction over property within their state's geographical borders, or over property that has minimum contacts with the state.  *Shaffer v. Heitner*, 433 U.S. 186, 207, 212 (1977). ("[W]hen claims to the property itself are the source of the underlying controversy… it would be unusual for the State where the property is located not to have jurisdiction.").   Property stationed within sovereign nations is not, under ordinary circumstances, subject to a federal court's *in rem* jurisdiction.  *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984) ("[N]o nation can expect its laws to reach further than its jurisdiction to prescribe, adjudicate, and enforce."); *see also* Restatement (Third) of Foreign Relations Law § 421 (1987).  In this case, the Government is attempting to establish *in rem* jurisdiction over tens of millions of dollars worth of assets located in New Zealand and Hong Kong.  Compl. ¶¶ 43-86.  Its attempt should be jurisdictionally foreclosed under the circumstances of this case.

The Fourth Circuit holds that a district court does not have *in rem* jurisdiction unless it has "exclusive custody or control" over the property at issue.  *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999) ("Only if the court has exclusive custody and control over the

property does it have jurisdiction over the property"). Exclusive custody and control obviously do not exist over the foreign assets at issue here. Nor does this Court have constructive possession over the property. The "fiction" of constructive possession requires that the Court possess some part of Claimants' assets. *R.M.S. Titanic I*, 171 F.3d at 964. Yet *no portion* of the assets sought by the Government resides in this district. Furthermore, the fiction of constructive possession does not go so far as permitting a court to exercise jurisdiction "over personal property located within the sovereign limits of other nations." *R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel ("R.M.S. Titanic II")*, 435 F.3d 521, 530 (4th Cir. 2006). In such circumstances, absent "personal jurisdiction over [a] person or entity, no jurisdiction could exist. Indeed, no case or controversy exists." *Id.* The absence of personal jurisdiction in this case is dispositive.[5]

Even if the Court might claim to have "exclusive custody or control" over Claimants' assets necessary to allow *in rem* jurisdiction to potentially attach, the absence of "minimum contacts" between this forum and the assets at issue precludes this Court from exercising jurisdiction. "[T]he minimum contacts rule of *International Shoe* . . . applie[s] to actions *in*

---

[5]   Although other circuits have been satisfied as to "constructive possession" in cases where it was apparent that a foreign court would enforce a U.S. court's forfeiture order, *see* 28 U.S.C. § 1355(b)(2); *United States v. All Funds on Deposit in any Accounts Maintained in Names of Meza or De Castro*, 63 F.3d 148, 151 (2d Cir. 1995), the Fourth Circuit has never adopted that view. In any event, it is not clear that a New Zealand or Hong Kong court would return the relevant assets. *See, e.g.*, New Zealand Criminal Proceeds (Recovery) Act 2009 § 86(1) (if a foreign forfeiture order is enforced, the property is disposed with at the New Zealand Attorney-General's "discretion"); Hong Kong Mutual Legal Assistance in Criminal Matters Ordinance, Cap 525 § 27-28 and Schedule 2 ¶ 10 (if an external confiscation order is enforced, a Registrar of the High Court of Hong Kong controls disbursement of payments from those assets, including to cover local costs, to pay the foreign government the "fixed amount" of its claims, to return any excess to original property owners, and to deposit any excess in Hong Kong's general treasury). This case presents the specter that an order of civil forfeiture would amount to an advisory opinion forbidden by Article III. *See R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel*, 435 F.3d 521, 530 (4th Cir. 2006)).

rem." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 224 (4th Cir. 2002) (mark up in original) (citations omitted). Under this test, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*

As the Supreme Court has recently instructed, in order for a court "to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. . . [f]irst, the relationship must arise out of contacts that the 'defendant himself 'creates with the forum State. . . . [and s]econd, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014). In so holding, *Walden* corroborates the results reached by the courts, including the Fourth Circuit, that have consistently held that an entity's web-mediated passive transactions with the residents of a state do not by themselves support personal jurisdiction. *See, e.g., ALS Scan, Inc.*, 293 F.3d at 707-09, 713-14 (in copyright infringement action, finding no jurisdiction over webhosting company, because "[o]ther than maintain its website on the Internet, [defendant] has engaged in no activity in Maryland, and its only contacts with the State occur when persons in Maryland access Digital's website."); *Burleson v. Toback*, 391 F. Supp. 2d 401, 515 (M.D.N.C. 2005) (holding, in case where defendant ran an internet business and accepted advertising payments, including several from forum state North Carolina, that no minimum contacts existed between state and defendant, as site "aim[ed] to target and focus on individuals interested in miniature horses all over the world, no matter what their geographic location. . . . Thus, the advertisements, while possibly of interest to North Carolina residents, do not indicate a manifest intent to target North Carolina.").

Under these precedents, the Government's vague allegations to transactions involving an unspecified amount of business with some unspecified number of consumers within Virginia—some unspecified fraction, possibly *none*, of whom may have uploaded or downloaded infringing copyrighted files via the Megaupload website—cannot sustain the "minimum contacts" necessary for a Virginia federal court to exercise jurisdiction over all of the defendant assets located in New Zealand and Hong Kong.  To be clear, the Government has not pleaded a connection specifically between the defendant overseas assets and any criminal acts or monetary transactions that happened in Virginia, or, indeed, elsewhere in the United States.  Even assuming *arguendo* that the Megaupload defendants had minimum contacts sufficient to expose them to criminal prosecution and penalties specifically for any criminal conduct occurring in the United States, that is a far cry from supposing that they subjected themselves to a U.S. court holding sway over **any and all** of their assets **around the world** via civil forfeiture.  For the Eastern District of Virginia nonetheless to assert *in rem* jurisdiction over all of the claimed assets reposing in New Zealand and Hong Kong would blow through established limits on its *in rem* jurisdiction.  *See R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999) ("[C]ourt[s] [can]not exercise in rem jurisdiction, as traditionally understood, so as to vest rights in property outside of its territory . . . [t]his conclusion is compelled by a recognition of the sovereign limits of the United States . . . .")

## IV.    THE CIVIL FORFEITURE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Even to the extent that the Complaint might implicate federal law, it fails to state a valid claim for civil forfeiture.  Because this is a forfeiture action, the Supplemental Rules impose standards "more stringent than the general pleading requirements" under Federal Rule of Civil Procedure 8.  *United States v. $15,270,885.69*, 2000 WL 1234593, at *2 (S.D.N.Y. Aug. 31,

2000) (quoting *United States v. Daccarett*, 6 F.3d 37, 47 (2d Cir. 1993)).  The threshold bar in this case is higher than that for an ordinary civil complaint governed by Federal Rule of Civil Procedure 8(a):  "Rule G (and its predecessor Rule E(2)) creates a heightened burden for pleading on the plaintiff."  *United States v. All Assets Held at Bank Julius Baer & Co*., 571 F. Supp. 2d 1, 16-17 (D.D.C. 2008).  *See also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 324 (2d ed. 1997) (Rule E(2) "requires a more particularized complaint than is demanded in civil actions generally").

Specifically, Supplemental Rule G ("Rule G") requires that a complaint in a forfeiture action *in rem* "state sufficiently detailed facts to support a reasonable belief" that "the property is subject to forfeiture." Supp. R. G(2)(f); *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002).   The Government must "state[ ] the circumstances giving rise to the forfeiture claim with sufficient particularity" for the sake of enabling a claimant to conduct a "meaningful investigation of the facts and draft[ ] a responsive pleading."   *Id.* at 866.  This burden to plead "added specifics is thought appropriate because of the drastic nature of those remedies."   Wright, Miller & Marcus, *supra*, § 3242; *see also United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 154 (3d Cir. 2003); *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 638 (1st Cir. 1988).  Here, these requisite specifics are lacking.

### A.      The Government Has Failed To State A Claim For Forfeiture Because It Has Not Properly Alleged Criminal Copyright Infringement As A Predicate

In Claim 1 of its Complaint, the Government seeks civil forfeiture of the assets based upon allegations of criminal copyright infringement.  Compl. ¶¶ 93-95.  In order to meet Supp. R. G's heighted pleading requirements, the Government needed to plead, at a minimum, the civil requirements of copyright infringement, including:  "(1) which specific original works are the subject of the claim; (2) [who] owns the copyrights in issue; (3) that the works in issue have been

registered; and (4) by what acts and during what time frame defendants have infringed the copyright." *Paragon Servs. v. Hicks*, 843 F. Supp. 1077 (E.D. Va. 1994). What is more, the Government needed to plead the additional requirements of criminal liability, including facts that establish willfulness. 17 U.S.C. § 506; *see also In re Bashas' Inc.*, 2013 WL 1932820, at *3 (D. Ariz. May 8, 2013) (dismissing complaint that "broadly alleges . . . willfully infringed copyright[s]"). Further, the Government needed to plead specific facts establishing that Megaupload aided or abetted or conspired to commit copyright infringement. Above all, in order to state a claim for civil forfeiture, the Government needed to plead how each of the defendant assets "constitutes or is derived from proceeds traceable" to the acts of criminal infringement. 18 U.S.C. § 981(a)(1)(C); *see also* 18 U.S.C. § 2323 (property must be "proceeds obtained directly or indirectly as a result of the commission" of copyright infringement).

The Government's Complaint and Superseding Indictment are defective in these respects: in neither does the Government even meet the *minimum* standards for pleading *civil* copyright infringement, much less the heightened standards of *Supplemental Rule G* for pleading *criminal* copyright infringement.[6] Because of variations in volition, knowledge, fair-use eligibility, and other individualized circumstances, it is imperative to assess copyright infringement on a copyright-by-copyright basis. *See, e.g., Viacom Int'l, Inc. v. YouTube, Inc*., 676 F.3d 19, 34 (2d Cir. 2012) (requiring assessment of knowledge level of defendant as regarded each and every file alleged to be part of defendant's mass infringement); *Viacom Int'l Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110, 115-123 (S.D.N.Y. 2013) (ruling that plaintiffs had no "clip-by-clip" evidence to prove knowledge of infringement for any of the 63,060 video clips-in-suit). Failure to identify

---

[6] Assuming *arguendo* that subject-matter jurisdiction exists, the problems with extraterritoriality and reliance upon secondary criminal copyright liability identified *supra* at §§ II(A), II(B), would also necessitate dismissal on the merits for failure to state a claim.

*individual* infringement of *individual* works itself warrants dismissal.   *See, e.g., Home Design Servs., Inc. v. J.F. Schoch Bldg. Corp.*, 2012 WL 442008, at *3 (E.D. Va. Feb. 10, 2012) (dismissing because "This information is essential to Plaintiff's claim, and yet, it is notably absent from Plaintiff's Complaint."); *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) ("Plaintiff asks the Court to make an inferential leap and conclude that . . . Wiley is likely to have infringed his rights in at least one of these 66 photographs.")

Missing from the Government's pleadings are specifics about, *e.g.*, (i) what works are at issue; (ii) whether those works are registered in the United States; (iii) whether those works were uploaded or downloaded and stored in the United States; (iv) which end users performed the infringing acts; (v) whether the end users acted with the intent to violate United States copyright law and (vi) when the alleged acts of infringement occurred (and whether they fell within the Copyright Act's five-year statute of limitations).   17 U.S.C. § 507(a).   The Complaint does not contain a single instance of infringement as to which all of the requisite facts have been pleaded.

The closest the Complaint comes to these specifics is mentioning that Dotcom distributed a link to an unnamed "musical recording" by "50 Cent."  Compl. ¶ 18.  The Complaint does not allege the name of the recording; its copyright registration number; the authorization status of link; whether Dotcom properly purchased the recording; who uploaded the file to create the link; who (if anyone) downloaded the file from the link; where any uploads or downloads occurred; or where Dotcom was geographically when he distributed the link.[7]  The Complaint does provide a

---

[7]   Simply distributing a link to a page where others can download content is not, by itself, copyright infringement. *See, e.g., Online Policy Group v. Diebold, Inc.,* 337 F. Supp. 2d 1195, 1202 n.12 (N.D. Cal. 2004) ("hyperlinking per se does not constitute direct copyright infringement because there is no copying").   The Government cannot state a claim for forfeiture by alleging merely that a party published links to Megaupload's URLs.

date of distribution (December 3, 2006) but that date falls more than five years before the first Criminal Indictment, well outside the five-year statute of limitations set by 17 U.S.C. § 507(a).

The Superseding Indictment does not make up for these deficiencies. The Government's allegations surrounding the same "50 Cent" incident, for instance, stop short of making out elements of a crime. *See* Sup. Ind. ¶¶ 6, 73(u). The Superseding Indictment is replete with instances where the Government blankly asserts that infringement occurred without alleging specific facts to ground that legal conclusion. *See, e.g.*, *id.* ¶ 26; ¶ 73(r); ¶ 73(s); ¶ 73(nn); ¶ 73(bbb); ¶ 73(eee); ¶73(fff); ¶73(kkk); ¶ 73(jjjj); ¶ 73(aaaaa); ¶ 73(ccccc); ¶ 73(kkkkk); ¶ 73(rrrrr). Because the Government has not set forth the specific circumstances underlying its forfeiture claim with sufficient particularity to permit meaningful factual investigation, it has failed to state a proper claim for forfeiture. *See Mondragon*, 313 F.3d at 866.

Willfulness, too, is an essential element of criminal copyright infringement. *See* 17 U.S.C. § 506(a). As most circuits recognize, "the prima facie case for willful infringement requires a showing of specific intent to violate copyright law. " *BC Tech., Inc. v. Ensil Int'l Corp.*, 464 Fed. Appx. 689, 696 (10th Cir. 2012). To properly plead willful infringement, the government may not "broadly allege[] . . . willfully infringed copyright[s]". *In re Bashas' Inc.*, 2013 WL 1932820, at *3. As to the isolated instances of purported direct infringement by Megaupload (including its alleged agents), the Government offers no allegations indicating that, in those specified instances, the "defendant knew he was acting illegally rather than simply that he knew he was making copies." *Id.*

Similarly, for the Government to hold Megaupload accountable under 18 U.S.C. § 2 for the allegedly infringing activities of third-parties, it must plead that Megaupload's end users were themselves engaged in willful copyright infringement. *See, e.g.*, *United States v. Winstead*,

708 F.2d 925, 927-28 (4th Cir. 1983) ("To prove the crime of aiding and abetting the government must show that the defendant [was] aware of the principals' criminal intent and the unlawful nature of their acts.  Evidence that the defendant merely brought about the arrangement that made the criminal acts of the principals possible does not alone support a conclusion that the defendant was aware of the criminal nature of the acts.").  Allegations that Megaupload acted willfully are insufficient if the underlying *direct* infringements were not *themselves* willful.  *See* 17 U.S.C. § 506(a); *cf. Med. Supply Chain, Inc. v. Neoforma, Inc*., 419 F. Supp. 2d 1316, 1328 (D. Kan. 2006) (dismissing complaint for failure to adequately allege willfulness as element); *cf. United States v. Mekjian*, 505 F.2d 1320, 1324 (5th Cir. 1975) (dismissing indictment for same). "Even if civil liability has been established, without the requisite *mens rea* it does not matter how many unauthorized copies or phonorecords have been made or distributed:  No criminal violation has occurred." House Report, Copyright Felony Act, H.R. Rep. No. 997, 102nd Cong., 2nd Sess. 1992, 1992 U.S.C.C.A.N. 3569, P.L. 102-561.  The Government does not plead that *any* third-party user ever had the specific intent to violate copyright law, however, much less that Megaupload was aware of such intent.  The Government's failure to allege willfulness on the part of end users is fatal to its claim for forfeiture.

Even assuming, *arguendo*, that some frail, slender claim for specific U.S. infringement might somehow be extracted from the globe-spanning stew of the Complaint, the Complaint as a whole should still be dismissed.  If nothing else, the Government's pervasive reliance upon secondary criminal liability and extraterritorial conduct, combined with its conspicuous failure to plead the who, what, where, when, and how of infringement, would necessitate, at a minimum, that it replead—this time with requisite clarity and attention to key particulars.  *See, e.g., United States, ex. Rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a)

requires parties to make their pleadings straight forward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."); *see also Negron-Bennett v. McCandless*, 2013 WL 5552236, at *2 (E.D. Va. Oct. 8, 2013) *aff'd*, 572 F. App'x 246 (4th Cir. 2014).

**B.    The Government's Requested Remedy Of Civil Forfeiture Is Facially Disconnected, In Any Event, From The Underlying Crimes Alleged**

The Government's Complaint subjects to forfeiture every known cent ever earned by Megaupload.  *See* Compl. ¶ 72.  Such relief does not follow, however, unless Megaupload collected proceeds only from the United States, every penny Megaupload earned from the United States was in furtherance of criminal copyright infringement, and Megaupload earned revenue only within the statute-of-limitations period.  Only upon such a showing, as to which the Government bears the burden, might it be entitled to the forfeiture it seeks.  The allegations of this Complaint fall woefully short of stating a facially valid case for the requested forfeiture.

**1.    The Government Fails to Plead that the Defendant Assets Are Proceeds of Criminal Copyright Infringement**

To obtain forfeiture under 18 U.S.C. § 981 or § 2323, the Government must allege both the existence of proceeds generated by a crime and the traceability of those proceeds to the defendant property.  Failure to adequately plead that the proceeds at issue result specifically from criminal conduct justifies dismissal.  *See United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 374 (S.D.N.Y. 2008) ("[B]ecause any allegations that the Defendant Funds constitute the proceeds of unlawful activity . . . are conclusory at best, forfeiture pursuant to sections 981(a)(1)(A) and 1956 cannot stand."); *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 16 (D.D.C. 2013) ("Absent some specific indication that the Jet is derived from or traceable to illicit activity, the complaint must be dismissed.").

"[G]eneral allegations of lawlessness" are insufficient to establish forfeitability of specified assets.  *Id*. at 16.  And a complaint is facially inadequate if it fails to describe *specific*

transactions that trace back to a crime so as to justify a forfeiture request. *United States v. $1,399,313.74 in U.S. Currency (II)*, 592 F. Supp. 2d 495, 500 n.29 (S.D.N.Y. 2008) ("[T]he Government makes no specific allegations in support of the conclusion that concealing funds is particular to BMPE transactions involving narcotics laundering, rather than to *every* type of transaction on the BMPE."). Where a complaint admits that property may be derived from legitimate sources, a court should not infer that it represents the proceeds of illegal activity. *See One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 16 ("The government itself has alleged that Nguema owns or controls a number of companies. . . [a]bsent other details, the court cannot infer how Nguema's wealth may have been derived, nor from what sources, nor the legality of those sources.") Finally, if the illegal activity has not generated proceeds, then forfeiture is improper. *United States v. Genova*, 333 F.3d 750, 762 (7th Cir. 2003).

Here, the Government has failed to plead that *any* advertising revenues and subscription fees are proceeds of copyright infringement. In analyzing a copyright infringer's revenue and profits as a measure of damages under 17 U.S.C. § 504, the Fourth Circuit insists on specificity. *See, e.g., Dash v. Mayweather*, 731 F.3d 303, 312 (4th Cir. 2013) *cert. denied*, 134 S. Ct. 1761 (2014) ("After the plaintiff has alleged a conceivable connection between the infringement and the claimed revenues, his task is not yet done. The plaintiff must also prove the existence of a 'causal link between the infringement and the level of the [defendant's] revenues.'")

The Government's forfeiture theory disregards the fact that *every* download on Megaupload.com—including downloads of non-infringing content—occurred on a page that contained online advertisements and brought corresponding revenues. *See* Sup. Ind. ¶ 9. The Government has not alleged that every advertising cent Megaupload earned from every user click on every advertisement displayed worldwide was attributable to U.S. copyright

-24-

infringement, nor could it.  Yet the Superseding Indictment and civil Complaint seek forfeiture of *all* the advertising fees (more than $25 million) that Megaupload generated over the course of its existence.  *See* Sup. Ind. ¶¶ 4, 72.  By failing to allege causation, the Government has failed to make a *prima facie* case for traceability that is essential to forfeiture.  *Cf. Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 713-16 (9th Cir. 2004); *see also Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 523, 526 (4th Cir. 2003) (rejecting for lack of a causal link the argument that "some portion of the revenues that defendants earned . . . is attributable to the Defendants' infringement of [Plaintiff's] copyright").

Likewise, the Government has not pleaded facts establishing that all of Megaupload's worldwide subscription fees are proceeds of criminal copyright infringement.  *See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (subscription fees are not a financial benefit attributable to specific infringement where users were not paying to infringe).  In passing the DMCA, Congress explained that revenues from "one-time set-up fee" or "flat periodic payments for service" from users engaging in infringing activities did not constitute a "financial benefit directly attributable to the infringing activity."  S. Rep. No. 105-190, 1998 WL 239623, at *44-45.  The Government has acknowledged that Megaupload was used to distribute both non-infringing and infringing content.  *See, e.g.,* Sup. Ind. ¶ 73(bbbb).  Because the Government has not pleaded that all of the defendant assets are in fact proceeds of infringement, its forfeiture claim should not stand as stated.  *See One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 16; *cf. Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984) (technology that is "capable of substantial noninfringing uses" cannot be found infringing in its entirety).

> **2.  The Government Fails to Plead that the Defendant Assets Are Traceable to Criminal Copyright Infringement.**

The Complaint separately founders on traceability.  To survive a motion to dismiss, the Government's allegations in support of forfeiture must go beyond mere "conclusory statements." *$1,399,313.74 in U.S. Currency (I)*, 591 F. Supp. 2d 365, 376 (S.D.N.Y. 2008).  In *$1,399,313.74 in U.S. Currency (I)*, the court acknowledged that a pattern of deposits "strongly suggests the deliberate evasion of federal reporting requirements."  *Id*. at 375.  However, the Court determined that a mere suggestion was not enough if the complaint did not also allege those deposits were tied to specific illegal acts, and the complaint was dismissed for failing to adequately plead tracing.  *Id*. at 376.

The Complaint against Megaupload suffers the same deficiency.  The Government casts general aspersions of lawlessness on Megaupload, without detailing why specific transactions it lists are illicit.  Thus, the Government relies on a conclusory allegation that the "DBS 0320 account . . . received all of the proceeds of the copyright infringements."  Compl. ¶ 44.  Of course, that is not the same thing as alleging that DBS 0320 contains *only* "the proceeds of the copyright infringements," as would need to be true in order to justify the requested forfeiture. Indeed, the Government acknowledges that "some" payments into DBS 0320 were legitimate, which suffices to negate its essential premise that the contents of that account represent the proceeds of illegal activity.  *See* Sup. Ind. ¶ 18.  Moreover, the substance of the Government's allegation as to DBS 0320 boils down to the fact that the account received deposits from "the PayPal Account" and Moneybookers.  Compl. ¶¶ 45, 46.  Because no *specific* payment *into* either the PayPal Account or Moneybookers is identified, Compl. ¶ 72, the Complaint leaves

open the prospect that Megaupload "did not receive a penny" from infringement, thereby

warranting dismissal. *Genova*, 333 F.3d at 76.[8]

The Government speculativly alleges that there must be "some premium users" who paid

to access infringing content. Sup. Ind. ¶ 18. But the Government fails to identify any specific

transaction where a user in fact paid for infringing content. Without any details as to *which*

transactions *into* the Megaupload PayPal Account reflected payments for infringing material, the

Complaint is defective. This is a paradigmatic case where "the claimants would find it difficult

to know where to begin their investigation, what individuals to interview, or what documents to

review." *One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 16.

### 3.     The Government Fails to Plead that the Defendant Assets Are Proceeds Traceable to Money Laundering

The Government has failed to allege either of the two theories of money laundering

recognized by the Fourth Circuit. *See United States v. Alerre*, 430 F.3d 681, 693 n.14 (4th Cir.

2005) (distinguishing between "concealment" and "promotion" money laundering).

---

[8]  The Complaint makes cursory reference to "facilitation of copyright infringement" as a basis for forfeiture. Compl. ¶¶ 92-94. For that, the Government must demonstrate "a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3); *see also United States v. Mondragon*, 313 F.3d 862, 866 (4th Cir. 2002) (connection must be alleged in pleadings). A "substantial connection" requires that the property itself be involved in committing the offense. *See United States v. One 1998 Tractor*, 288 F. Supp. 2d 710, 711 (W.D. Va. 2003) *aff'd sub nom. United States v. Shimshiryan*, 117 F. App'x 863 (4th Cir. 2004) (trailer portion of tractor-trailer was not forfeitable where contraband was confined to the tractor); *United States v. 998 Cotton St., Forsyth Cnty., N.C.*, 2013 WL 1192821, at *10 (M.D.N.C. Mar. 22, 2013) (property was not subject to forfeiture on ground that it was the location where "drug money" was received); *United States v. One 2003 Mercedes Benz CL500*, 2013 WL 5530325, at *12 (D. Md. Oct. 3, 2013) (vehicle not subject to forfeiture when neither used to deliver drugs nor traceable to drug proceeds). The Complaint does not allege that any referenced real property was involved in infringing copyrights in the U.S. Similarly, the referenced vehicles are not alleged to have been used in any infringing act. There is no adequate allegation of proceeds at all, much less that property was acquired with "proceeds." Finally, although the bank accounts in question are alleged to have received Megaupload funds, simply serving as the repository is not enough. *See 998 Cotton St., Forsyth Cnty., N.C.*, 2013 WL 1192821, at *10. Thus the government has not sufficiently alleged any theory of forfeiture based upon facilitation.

"Concealment" money laundering requires that the Government demonstrate an intent to conceal the origin of funds. *Id.* This intent to conceal must be specifically alleged in order to survive a motion to dismiss  *See United States v. Gotti*, 457 F. Supp. 2d 411, 428 (S.D.N.Y. 2006) (dismissing indictment for failure to allege facts demonstrating intent to conceal).  Here, the Government makes no allegation of concealment beyond a bald, conclusory recitation of the statute.  Compl. ¶¶ 98, 99.  That states no claim consistent with pleading requirements.

The other recognized theory, "promotion" money laundering, requires the Government to demonstrate that a "specified unlawful activity" generated "proceeds."  *See United States v. Mankarious,* 151 F.3d 694, 704 (7th Cir. 1998) ("[The] money launderer must obtain proceeds before laundering can take place."); *Alerre*, 430 F.3d at 693 n.8 (promotion "require[s] the prosecution to trace" the proceeds).  A complaint that fails to allege proceeds and tracing is subject to dismissal.  *One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 14.  To survive dismissal, a complaint must specify the origin of proceeds.  *Cf. United States v. Real Prop. & Premises*, 657 F. Supp. 2d 1060, 1067 (D. Minn. 2009) (complaint alleged specific check numbers).  For the same reasons explained above, *see supra* at § IV(B), the Government has not alleged the existence of even one payment that Megaupload received in exchange for infringing content or anything else that is unlawful, and thus has failed to allege any traceable proceeds.

Even assuming that the Government's bald identification of accounts might somehow suffice, the Government must also identify "a 'completed offense' after which money laundering can occur."  *United States v. Christo*, 129 F.3d 578, 580 (11th Cir. 1997).  A complaint that does not connect traced funds to criminal activity should be dismissed.  *United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 373 (S.D.N.Y. 2008).  As discussed *supra*

at §§ II(A), II(B), because the criminal statute covers neither secondary nor extraterritorial copyright infringement, the Government has not pleaded connection to any cognizable crime.[9]

## V.   IF THE GOVERNMENT'S COMPLAINT IS NOT DISMISSED AS A MATTER OF LAW, FURTHER PROCEEDINGS SHOULD BE STAYED

Should the Court deny Claimants' motion to dismiss or delay ruling on it, Claimants respectfully ask that the Court stay the civil forfeiture action pending resolution of the criminal case on which the civil action is predicated.  Pursuant to 18 U.S.C § 981(g)(2), "the court *shall* stay the civil forfeiture proceeding with respect to [a] claimant if the court determines" that the following three conditions are present: "(A) the claimant is the subject of a related criminal investigation or case; (B) the claimant has standing to assert a claim in the civil forfeiture proceeding; and   (C) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case."

Per the terms of the statute, a stay is mandatory.  ***First***, all but one of the Claimants—Mr. Dotcom's estranged spouse, Mona Dotcom—are defendants in the criminal case.  And the criminal case is obviously "related" to the civil action, as confirmed by the fact that the Government incorporates by reference the entirety of the Superseding Indictment into the Complaint (*see* Compl. ¶ 16), and the copyright infringement theories and allegations that lie at

---

[9]   The Superseding Indictment makes an allegation of wire fraud, but that is omitted from the civil Complaint.  *See* Compl. ¶¶ 96-100.  In any event, a civil complaint must allege wire fraud with the specificity required by FRCP 9(b), which this Complaint does not do.  *See Levinson v. Massachusetts Mut. Life Ins. Co*, 2006 WL 3337419, at *7 (E.D. Va. Nov. 9, 2006) (dismissing RICO complaint for failing to allege wire fraud with 9(b) specificity).  Although the Complaint alleges that certain failures by Megaupload to adequately respond to "takedown" notices amount to misrepresentations, Compl. ¶¶ 27-29, the specifics it offers are consistent with mere negligence, which falls short of the 9(b) standard.  *See Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 553-54 (M.D.N.C. 2013).  Nor has the Government adequately pled that any "victim" was deprived of "money" or any other cognizable "property," as required.  *Cleveland v. United States*, 531 U. S. 12, 26 (2000) (holding that the "object of the fraud" must specifically "be '[money or] property' in the victim's hands") .

the heart of the criminal case serve drive the case for civil forfeiture (*see, e.g.*, Compl. ¶ 93). **Second**, the Claimants have established their standing to assert a claim in the civil forfeiture proceeding in their motion to dismiss. *See supra*, at § I.  **Third**, forcing the Claimants to litigate this civil forfeiture matter would irreparably harm their rights against self incrimination.  The Government's civil discovery must be expected, consistent with its Complaint, to delve into the Claimants' actions relevant to the underlying criminal case.  The Claimants thus would be left with a Hobson's choice in responding to that discovery:  either forfeit tens of millions of dollars in assets, or else jettison their constitutional rights against self-incrimination.  Putting Claimants to that choice would subject their constitutional rights to unbearable burdens and defeat the whole purpose of the mandatory stay requirement of § 981.

Even if the Court were to deem § 981(g)(2) inapplicable, however, it should still exercise its inherent authority to stay the civil forfeiture proceeding.  *See, e.g.*, *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  Indeed, as the Court has recognized in several prior instances, stay of parallel civil litigation is warranted to protect Claimants' rights under the Fifth Amendment in connection with the criminal case.  *See Microhits, Inc. et al. v. Megaupload, Ltd. et al.*, 1:12-cv-00327-LO-IDD, Dkt. No. 36 (Jun. 15, 2012); *Twentieth Century Fox Film Corp., et al. v. Megaupload, Ltd. et al.*, 1:14-cv-00362, Dkt. 43 (Jul. 29, 2014); *Warner Music Group Corp., et al. v. Megaupload, Ltd. et al.*, 1:14-cv-00374, Dkt. 36, (Jul. 29, 2014).

## CONCLUSION

Claimants respectfully submit that the Complaint should be dismissed, in whole or in part, under Rule 12(b)(1), (2), and (6), or else, alternatively, this case should be stayed pending completion of parallel criminal proceedings.

Dated:  October 10, 2014    Respectfully submitted,

              /s/ Craig C. Reilly
           Craig C. Reilly, Esq. (VSB # 20942)
           111 Oronoco Street
           Alexandria, Virginia 22314
           TEL (703) 549-5354
           FAX (703) 549-2604
           craig.reilly@ccreillylaw.com

           *Counsel for Claimants*[10]

| | |
|---|---|
| Ira P. Rothken (*pro hac vice*) | William A. Burck (*pro hac vice pending*) |
| Jared R. Smith (*pro hac vice*) | Derek L. Shaffer (*pro hac vice pending*) |
| ROTHKEN LAW FIRM | Stephen M. Hauss (*pro hac vice pending*) |
| 3 Hamilton Landing | QUINN EMANUEL URQUHART & |
| Suite 280 | SULLIVAN LLP |
| Novato, CA 94949 | 777 6th Street NW, Suite 1100 |
| (415) 924-4250 | Washington, D.C. 20001 |
| (415) 924-2905 (fax) | (202) 538-8000 |
| ira@techfirm.net | (202) 538-8100 (fax) |
| jared@techfirm.net | williamburck@quinnemanuel.com |
| | derekshaffer@quinnemanuel.com |
| | stephenhauss@quinnemanuel.com |

Ira P. Rothken (*pro hac vice*)

Jared R. Smith (*pro hac vice*)

ROTHKEN LAW FIRM

3 Hamilton Landing

Suite 280

Novato, CA 94949

(415) 924-4250

(415) 924-2905 (fax)

ira@techfirm.net

jared@techfirm.net

*Counsel for Claimants Kim Dotcom*
*And Megaupload Limited*

William A. Burck (*pro hac vice pending*)

Derek L. Shaffer (*pro hac vice pending*)

Stephen M. Hauss (*pro hac vice pending*)

QUINN EMANUEL URQUHART &
SULLIVAN LLP

777 6th Street NW, Suite 1100

Washington, D.C. 20001

(202) 538-8000

(202) 538-8100 (fax)

williamburck@quinnemanuel.com

derekshaffer@quinnemanuel.com

stephenhauss@quinnemanuel.com

*Counsel for Claimants Kim Dotcom and*
*Megaupload Limited*

---

[10] ***Claimants***: Kim Dotcom, Mona Dotcom, Julius Bencko, Sven Echternach, Mathias Ortmann, Finn Batato, Bram van der Kolk, Megaupload Limited, Megapay Limited, Vestor Limited, Megamedia Limited, and Megastuff Limited.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2014, the foregoing was filed and served electronically

by the Court's CM/ECF system upon all registered users:

Dana J. Boente
UNITED STATES ATTORNEY
Karen Ledbetter Taylor
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22304
Karen.Taylor2@usdoj.gov
*Attorneys for the United States*

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355 (NEW)
craig.reilly@ccreillylaw.com

*Counsel for Claimants*