UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,  *Plaintiff*,  v.  ALL ASSETS LISTED IN ATTACHMENT A, *etc*.,  *Defendants in Rem*. | No. 1:14cv969 (LO / TRJ) |

**CLAIMANTS' BRIEF IN OPPOSITION TO
UNITED STATES' MOTION TO COMPEL**

Plaintiff, United States of America, commenced this civil forfeiture action *in rem* against assets seized from Claimants[1] (Doc. 1, *Complaint*, ¶¶ 43-86). Pursuant to Supplemental Rule G(5)(a), Claimants duly filed claims, identifying the assets each one owned (Doc. 3 – 9 & 14, *Claims*). The government then served "special interrogatories" under Supplemental Rule G(6)(a), to which each Claimant served answers and objections (Doc. 33, 34 & 38-1). Claimants answered the special interrogatories directed to the "limited" topics permitted by rule—a "claimant's identity and relationship to the defendant property"—and objected to the others as outside the scope of Supplemental Rule G(6)(a). The government now moves to compel further answers, arguing that the objected-to questions are directed to the topic of "the claimants' identity ***as fugitives***" (Doc. 38, *Gov. Brief* at 5 (emphasis added)). That argument cannot be squared with the "plain meaning" of Supplemental Rule G(6)(a). The motion to compel should be denied.

---

[1] ***Claimants:*** Kim Dotcom, Mona Dotcom, Julius Bencko, Sven Echternach, Mathias Ortmann, Finn Batato, Bram van der Kolk, Megaupload Limited, Megapay Limited, Vestor Limited, Megamedia Limited, and Megastuff Limited.

## STATEMENT OF THE CASE

The government commenced this civil forfeiture action *in rem* against assets seized from Claimants purportedly because they were "proceeds" of a "massive" worldwide conspiracy to commit criminal copyright infringement in violation of the laws of the United States (Doc. 1).[2] Under Supplemental Rule G(5)(a), Claimants duly filed claims to their assets (Doc. 3 – 9 & 14). Claimants also responded to the complaint by filing a motion to dismiss, demonstrating, *inter alia*, that the Court lacked jurisdiction and the alleged activity at the very core of this action and the *Criminal Action*—"secondary copyright infringement"—***is not a federal crime*** (Doc. 19 & 20). On the government's motion (Doc. 31), an order was then entered deferring the government's opposition to Claimants' motion to dismiss (Doc. 32). New dates for the filing of the government's opposition and the hearing have not been set.

In addition, the government has filed a motion to strike all the claims under the fugitive disentitlement statute (Doc. 39). That motion will be heard January 16, 2014 (Doc. 41).

On September 24, 2014, the government served special interrogatories on each Claimant. By agreement, the due date for responses was extended to October 24, 2014. Claimants then served timely objections and responses. Now, the government seeks to compel further responses (Doc. 38). As is shown below, the motion to compel should be denied.

## ARGUMENT

### SUMMARY OF ARGUMENT

The scope of Supplemental Rule G(6)(a) is "***limited to*** the claimant's ***identity*** and ***relationship to the defendant property***." The government now argues that special interrogatories should be given a broader scope to permit inquiry into other facts regarding a

---

[2] The criminal action, filed in this District, is still pending. *United States v. Kim Dotcom, et al.*, No. 1:12-cr-00003-LO (E.D. Va. filed Jan. 5, 2012) ("*Criminal Action*").

2

claimant's "standing" and status as a "fugitive." The Federal Rules of Civil Procedure, however, are given "their plain meaning." If unambiguous and narrow, the Court cannot give a rule a broader construction even if that might better serve the policy behind the rule. The Court must apply the text of Supplemental Rule G(6)(a) as written, not "improve upon it"—which is what the government erroneously urges. Thus, the scope of Supplemental Rule G(6)(a) cannot be expanded to permit inquiry into facts that may be relevant to whether a claimant is a fugitive.

## I.  THE SCOPE OF SUPPLEMENTAL RULE G(6)(a)

In 2006, "Rule G [was added to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions] to bring together the central procedures that govern civil forfeiture actions." FEDERAL CIVIL JUDICIAL PROCEDURE AND RULES, Supp. Rule G, Adv. Com. Notes, 2006 Adoption, at 330 (Westlaw 2014 rev. ed.). Included in the new rule was a subdivision for "special interrogatories:"

> (6) **Special Interrogatories**.
>
> (a) **Time and Scope**. The government may serve special interrogatories *limited to the claimant's identity and relationship to the defendant property* without the court's leave at any time after the claim is filed and before discovery is closed. But if the claimant serves a motion to dismiss the action, the government must serve the interrogatories within 21 days after the motion is served.
>
> (b) **Answers or Objections**. Answers or objections to these interrogatories must be served within 21 days after the interrogatories are served.
>
> (c) **Government's Response Deferred**. The government need not respond to a claimant's motion to dismiss the action under Rule G(8)(b) until 21 days after the claimant has answered these interrogatories.

FED.R.CIV.P. SUPP.R. G(6) (emphasis added). The scope of these special interrogatories, therefore, is expressly "*limited*" to two factual issues: (i) "the claimant's identity" and (ii) the claimant's "relationship to the defendant property."

3

### A. THE "PLAIN MEANING" OF SUPPLEMENTAL RULE G(6)(a)

The principles for construing the Federal Rules are simple and direct: "[Courts] give the Federal Rules of Civil Procedure their plain meaning, and generally with them as with a statute, '[w]hen [the Court] find the terms … unambiguous, judicial inquiry is complete.'" *Pavelic & LeFlore v. Marvel Entertainment*, 493 U.S. 120, 126 (1989) (construing Rule 11 and declining to expand its scope) (citations omitted). Specifically, the Court is not free to adopt a construction that "would more effectively achieve the purposes of the Rule;" rather, the Court must "apply the text, not improve upon it." *Id*. Yet, the government seeks to have the Court expand and "improve" the special interrogatory rule.

Importantly, there is nothing ambiguous—either in isolation or in the context of the rule—about the words "identity" and "relationship to the defendant property." And the government points to no ambiguity in those words. Instead, the government urges the Court to ***expand*** the scope of this provision to cover other facts regarding "standing" and "the claimants' identity ***as fugitives***" (Doc. 38, *Gov. Brief* at 5 (emphasis added)). In effect, the government wants the Court to engraft the words "standing" and "fugitive" onto the rule to expand the meaning of the unambiguous rule as written. Under *Pavelic & LeFlore*, the Court cannot do that even if that might "improve" the rule or better serve its purposes.

It is doubtful at best, however, that the rule enactors intended (yet failed to express) the broader scope that the government now seeks. First, the rule uses the word "limited" to expressly emphasize the narrowness of its scope. Expanding the scope would be contrary to that express intent. Second, in 2006, when this rule was adopted, the fugitive disentitlement statute, 28 U.S.C. § 2466, had already been enacted as part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). Yet, the word "fugitive" does not appear in Supplemental Rule G(6)(a).

4

The omission of the word "fugitive," therefore, is glaring. If the rule drafters had intended that fugitive-status be within the scope of special interrogatories, would they have *expressly* included "identity" and "relationship," but left the claimant's fugitive-status to inclusion *by implication*? Plainly, they would not.

The canons of construction, in fact, preclude any reading of the rule that expands it to include fugitive-status by implication. Under the canon of statutory construction *expressio unius est exclusio alterius*, the omission of the word "fugitive" from the rule is presumed to be "by deliberate choice, not inadvertence." *Bruesewitz v. Wyeth LLC,* 131 S. Ct. 1068, 1076 (2011) (declining to expand scope of law to cover a third related issue, because if Congress had intended inclusion of all three "it would be strange to mention specifically only two, and leave the third to implication"). Therefore, the express inclusion of "identity" and "relationship," but omission of "fugitive," by itself negates the government's proposed construction of the rule.

Moreover, the fugitive disentitlement statue contains a discretionary, multi-factorial test to determine if a claimant is a "fugitive" whose claim may be disallowed. *See* 28 U.S.C. § 2466(a)(1)(A)-(C) & (2). Yet, there is no mention in the text of Supplemental Rule G(6)(a) that the scope of special interrogatories includes such facts as (i) whether the claimant has "notice or knowledge" that a warrant for his arrest has issued, (ii) whether the claimant has "purposefully [left] the jurisdiction of the United States," (iii) whether the claimant has "decline[d] to enter or reenter the United States," or (iv) whether the claimant "is not confined or held in custody." Nonetheless, the government erroneously urges the Court to construe Supplemental Rule G(6)(a) as if those specific factual subjects also were included within scope of the rule by implication under the rubric "identity as fugitives." They are not, and the Court cannot engraft them on the rule.

### B.     THE ADVISORY COMMITTEE NOTE IS NOT THE LAW

The government also relies on the Advisory Committee Note as support for expanding the scope of this rule.  Quoting a snippet from the note, the government argues that the scope of special interrogatories encompasses **all** facts pertaining to "standing"—a word that appears in the note ***but not in the rule***.  That argument fails for two reasons.

First, "the Advisory Committee Note is not the law; the rule is."  *United States v. Carey*, 120 F.3d 509, 512 (4th Cir. 1998).  If the rule "is unambiguous, [the Court] need not even consult the note to determine the rule's meaning."  *Id*.  And "if the rule and the note conflict, the rule must govern."  *Id*.  Here, at best, the rule and the note conflict about the scope; therefore, the narrower rule language governs.  Instead of using the word "standing" to more broadly describe the scope of special interrogatories, the rule specifically states that the scope is "***limited to*** the claimant's ***identity*** and ***relationship*** to the defendant property."  The word "standing" cannot be written-into the rule to broaden its scope simply because that word appears in the note.

Second, while the word "standing" appears in the note, the drafters themselves nonetheless emphasized the rule's "limited" scope in several ways.  Initially, the drafters contrast Supplemental Rule G(6) with its admiralty counterpart, Supplemental Rule (C)(6), which allows broad threshold discovery on merits-issues, and explain that "Civil forfeiture practice does not require such and extensive departure from ordinary civil practice."  FEDERAL CIVIL JUDICIAL PROCEDURE AND RULES, Supp. Rule G, Adv. Com. Notes, 2006 Adoption, *Subdivision (6)*, at 332 (Westlaw 2014 rev. ed.).  Moreover, when explaining the scope of the rule, the drafters state that it may be "useful … to permit the government to file limited interrogatories at any time after a claim is filed to gather information that bears on the claimant's standing," but then specify that the factual inquiries bearing on standing that are permitted would be "***limited to*** the claimant's

identity and relationship to the defendant property." *Id*. (emphasis added). Thus, the reference to "standing" in the note is not *carte blanche* to inquire into other issues purportedly bearing on standing, but only as "limited" in the rule itself—*viz*., "limited to the claimant's identity and relationship to the defendant property."

Even if the note might suggest a broader reading, however, the Court may not adopt it in the face of the narrow language of the rule. Where the note "can be read in two ways"—one giving a broader reading, the other a narrower one—the Court must read the note, if at all, "in a manner consistent with the language of the rule itself." *Carey*, 120 F.3d at 512. Here, that means the Court must adopt the narrower reading of the note that is consistent with the rule as narrowly written.

### C. FUGITIVE-STATUS IS DISTINCT FROM IDENTITY AND STANDING

Although courts often treat fugitive-status as a threshold issue that does not mean it is "an issue of standing" as the government argues (Doc. 38, *Govt. Brief* at 6). Fugitive-status is not an element of either "identity" or "standing" as the government erroneously asserts. Instead, it is distinct from both.

#### 1. Fugitive-Status is Distinct from "Identity"

Coining a phrase not found in the rule, the note, or the case law, the government argues that special interrogatories may inquire into the claimants' "identity as fugitives" (Doc. 38, *Gov. Brief* at 5). That is mere bootstrapping, and the phrase is as meaningless as arguing that special interrogatories may inquire into the claimants' "identity as criminals." More importantly, whether a claimant is a "fugitive" depends on certain factors stated in the fugitive disentitlement statute, not his "identity."

As used in the rule, "identity" is not a special term-of-art, but is directed only to the claimant's name and address. *See* FED.R.CIV.P. SUPP. R. G(5)(a)(i)(B) (claim must "identify the claimant") & (6)(a) (special interrogatory of "the claimant's identity"). Since the action is filed against the property *in rem*, the claimants are essentially intervenors. Stefan D. Cassella, *Asset Forfeiture Law in the United States*, §9-3(a) at 374 & n.26 (2d ed. 2013) (analyzing case law). That being so, claimants must state their names and addresses just as the parties must be indentified in a complaint to specify the plaintiff and defendant and permit the testing of each party's interest in the litigation. *Cf.* FED.R.CIV.P. 10(a) (the complaint "must *name* all the parties") & 17(a) (actions must be brought "in the *name* of the real party in interest") (emphasis added). Therefore, stating the "the claimant's identity" does not require disclosure of any facts regarding the claimant's purported fugitive-status—just the claimant's name and address.

### 2.      Fugitive-Status is Distinct from Standing

"Standing" in this context does not include whether a claimant is a fugitive; rather, it only includes his "relationship to the defendant property." "Standing" is a term of art, and it is well-established that a claimant has Article III "standing" in a civil forfeiture case if he has a legal interest in particular assets subject to forfeiture. *E.g.*, *United States v. $38,000.00 in United States Currency,* 816 F.2d 1538, 1543 (11th Cir. 1987) ("in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts"); *United States v. Munson*, 477 Fed. Appx. 57, 62 (4th Cir. 2012) (unpublished) ("In order to contest a government forfeiture action, a claimant must have the Article III standing required for any action brought in federal court. In order to establish Article III standing, a claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property.").

In this context, "standing" is equated with the claimant's "relationship to the defendant property"—such as owner, bailee for a disclosed bailor, or secured creditor.  Therefore, stating the "the claimant's … relationship to the defendant property" to show his standing does not require disclosure of any facts regarding the claimant's purported fugitive-status—just the claimant's legally cognizable property interest.

That fugitive-status is distinct from standing becomes indisputably clear when first-principles of standing are examined.  Standing is the "irreducible constitutional minimum" for invoking federal jurisdiction—if a litigant lacks "standing," then the Court lacks jurisdiction to adjudicate the litigant's putative claim.  *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (standing is "the irreducible constitutional minimum" for invoking federal jurisdiction).  Generally, to establish his standing, a party must have "'such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction."  *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (emphasis in original).  This rule applies to civil forfeiture actions.  *E.g.*, *Via Mat Int'l So. Am., Ltd. v. United States*, 446 F.3d 1258, 1262 (11th Cir. 2006) (citing *Warth* and holding that whether claimant has suffered an "injury" to his property interest sufficient to confer standing is "threshold matter"); *see also Matthews v. United States*, 917 F. Supp. 1090, 1104-05 (E.D. Va. 1996) (citing *Warth* in criminal forfeiture and holding that whether person has "a sufficient interest in the property to give him Article III standing" is "threshold inquiry").  Accordingly, standing is mandatory—a claimant must have a sufficient property interest to confer standing, and the Court has no discretion to waive that threshold requirement.

Whether a person is a "fugitive," however, does not depend on his legally cognizable interest in the defendant property, but on certain statutory factors—such as whether he has been indicted and currently is outside the jurisdiction of the United States criminal courts.  *See* 28

U.S.C. § 2466(a)(1)(A)-(C) & (2). In other words, a claimant could have a sufficient interest in the defendant property to have standing, but nonetheless be a "fugitive."

Moreover, when the person is found to be a fugitive, he is not automatically disallowed from making a claim for the defendant property; rather, under the statute, "A judicial officer *may* disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action … ." 28 U.S.C. § 2466(a) (emphasis added). Unlike standing, then, fugitive disentitlement is discretionary. That difference proves the distinction: a person who lacks standing is automatically disallowed from pursuing a claim; a person who is a fugitive is not automatically disallowed from pursuing a claim. If fugitive-status were an element of standing, then disallowance would be automatic—which it is not.

Fugitive-status, therefore, is not a standing issue, and is not within the scope of special interrogatories no matter how broadly construed.

### D. THE CASE LAW DOES NOT SUPPORT THE GOVERNMENT'S POSITION

Importantly, none of the cases cited by the government allow the use of special interrogatories to inquire into fugitive-status facts. Claimants have found no such cases, either.

Indeed, the principal cases cited by the government concern the unexplained or ambiguous assertion, by a claimant of limited means, of a "possessory" interest in a large hoard of cash stuffed in boxes or garbage bags in the trunk of a car he was driving. *E.g*., *United States v. $133,420.00 in U.S. Currency*, No. 3:09-cv-08096, 2010 WL 2594304 (D. Ariz. 2010), *aff'd*, 672 F.3d 629 (9th Cir. 2012) (box in trunk); *United States v. $307,970.00 in U.S. Currency*, No. 4:12cv136-FL, 2013 U.S. Dist. LEXIS 114137, 2013 WL 4095373 (E.D.N.C. Aug. 13, 2013) (garbage bag in trunk). Generally, however, the "[u]nexplained naked possession of a cash hoard … does not rise to the level of the possessory interest requisite for standing to attack the forfeiture

proceeding." *$133,420.00 in U.S. Currency*, 672 F.3d at 639 (citation omitted). In such circumstances, the claimant's purported "possessory" interest in the "cash hoard" may justify more detailed special interrogatories to explain his putative property interest—the assumption being that the amount of cash, coupled with the unconventional manner of transporting it, indicate that the cash was derived from criminal activity and that the claimant is a participant in the crime or a "courier" for other criminal actors.

Even in the cases cited by the government, however, the courts held that the limits of Supplemental Rule G(6) had been exceeded by certain inquiries. *$133,420.00 in U.S. Currency*, 672 F.3d at 643 n.5; *$307,970 in U.S. Currency*, 2013 U.S. Dist. LEXIS 114137 at *16-17. Thus, even in a "cash hoard" case, the court may prohibit a detailed inquiry into the claimant's financial transactions through special interrogatories. *United States v. $14,800.00 in U.S. Currency*, No. 1:11cv3165, 2012 U.S. Dist. LEXIS 141689, at *14-16, 2012 WL 4521371 (D. Md. Sept. 28, 2012) (backpack containing cash found in rental car driven by claimant) ("The Government seems to want a paper trail documenting each transaction underlying the possession of the defendant currency. But, the basis for this request defies common sense."). Accordingly, the broader inquiry by special interrogatories permitted in "cash hoard" cases nonetheless has limits.

This is not a "cash hoard" case. The assets at issue are titled real property, titled vehicles, and numbered bank accounts—all held in the legal names of the various Claimants. Each Claimant's "relationship to the defendant property" does not require detailed elaboration.

Finally, the government argues that limiting the scope of the special interrogatory rule "to the claimant's identity and relationship to the defendant property" might render them superfluous because Supplemental Rule G(5) already requires that a claim "identify" the claimant, identify the "specific property claimed," and state the claimant's "interest in the property" (Doc. 38, *Gov.*

*Brief* at 6-7 (citing, *inter alia*, *$133,420.00 in U.S. Currency*, 672 F.3d at 642-43)). The implied—but untenable—premise of this argument is that the rule drafters intended to state a broader scope in Supplemental Rule G(6) than in Supplemental Rule G(5), but inadvertently stated only a "limited" scope for special interrogatories. As shown above, the Court is not free to assume a mistake; rather, the Court must assume the narrow scope was deliberate. Similarly, the Court cannot "improve" this rule by giving it a broader construction than the plain meaning.

Moreover, special interrogatories are not necessarily superfluous even if only "limited to the claimant's identity and relationship to the defendant property." Claims made under Supplemental Rule 5(G) need not be filed in any particular form, 18 U.S.C. § 983(a)(2)(D), and a claimant (particularly a *pro se* claimant) might fail to describe his interest with sufficient particularity, fail to specify the property in which an interest is claimed, or, if a mere bailee, fail to identify the bailor. And as shown above, when a possessory interest is vaguely asserted in a "cash hoard," special interrogatories regarding the claimant's "relationship" to the cash would be warranted. Thus, it is fallacious to assume that special interrogatories necessarily would be superfluous if they are limited to their express scope.

## II.     SPECIFIC RESPONSES AND OBJECTIONS

Before turning to the special interrogatories that actually were asked, Claimants point out that the government seeks to compel answers to a question it did not ask. The government asserts that it asked each Claimant to "State with particularity your current interest in the defendant property" (Doc. 38, *Gov. Brief* at 2 (question no. 3)). Respectfully, that question was not asked of any Claimant. Indeed, the government already knows that Claimants are the titled owners of the defendant property (Doc. 1, *Complaint*, ¶¶ 43 – 86) and has not asked Claimants to give evidence of that.

As is shown next, the specific questions actually posed to which objections have been lodged are outside the narrow scope permitted for special interrogatories:

> **1.    State your current and all prior names, including aliases or nicknames, date and place of birth, all driver's license numbers, all passport numbers and countries of issue, current address, and all addresses for the last five (5) years. For each address, please list the inclusive months and years you or your spouse lived at each address.**

This inquiry pertains, in part, to "the identity of the claimant." All Claimants have provided their "current" names and "current addresses." Claimants respectfully submit that the other detailed information sought by the government ("date and place of birth, all driver's license numbers, all passport numbers and countries of issue, … and all addresses for the last five (5) years") exceeds the scope of the "identity" information that may be asked by special interrogatory.

Moreover, with respect to "prior names, including aliases or nicknames," the only Claimant who the government identified as having used other names is Kim Dotcom (Doc. 1, *Complaint* ¶ 7), and he is willing to confirm that he has used the other names alleged in the complaint (that is, "Kim Schmitz" and "Kim Tim Jim Vestor"). No other Claimant is alleged to have used, or be currently using, an alias or other name, and to counsel's knowledge, none have.

> **2.    If you have ever been arrested or convicted of a crime in any country, please state the date of the arrest or conviction, the charges, the name and address of the court in which you were convicted, the offense you were charged with or were convicted of, and the sentence or other outcome.**

All Claimants have objected because this request exceeds the scope of the information that may be asked by special interrogatory. The government contends that this information bears on whether a Claimant is a "fugitive" whose claim may be disallowed under the fugitive disentitlement statute, 28 U.S.C. § 2466. Claimants respectfully submit, as shown above, that the scope of special interrogatories does not encompass that information.

Moreover, even under the fugitive disentitlement statute, the criminal action and civil forfeiture action must be "related." 28 U.S.C. § 2466(a). Rather than seeking information about possible criminal actions "related" to this case, the government simply is fishing for any information about any criminal cases in any court in any country. Thus, this interrogatory seeks irrelevant information in any event.

> **3.   In your claim dated August 28, 2014, you state under penalty of perjury that you are the "owner" of all funds in [certain numbered bank accounts] because you opened the accounts under your name and have maintained and operated the accounts. Please state the source of the funds in [those] accounts.**
>
> **4.   [*Kim Dotcom only*] In your claim dated August 28, 2014, you state under penalty of perjury that you are the "owner" of various vehicles, real properties, a Computershare account and other miscellaneous properties named in the Complaint for Forfeiture *In Rem*. Please state the source of the funds used to purchase each of these properties.**

Importantly, the government is not questioning whether Claimant's own the bank accounts or the other assets that they have claimed to own; rather, it asks only about the "source of the funds." All Claimants objected to the "source of the funds" questions as exceeding the scope of special interrogatories. Claimants respectfully submit that this is a merits-issue that cannot be inquired into by special interrogatory.

Specifically, this inquiry pertains to the merits-issue of whether the funds in each account (or that was used to purchase real or personal property) may be "subject to forfeiture" on statutory grounds. *See* 18 U.S.C. § 981(a)(1). That statute defines the merits-criteria for forfeiture—such as, whether funds "constitute[] or [have been] derived from proceeds traceable to a violation of" federal criminal statutes or "a conspiracy to commit such offense." 18 U.S.C. § 981(a)(1)(C). In this case, whether an asset constitutes "proceeds" is a merits-issue inquiry pertaining to Count I of the complaint (Doc. 1, *Complaint*, ¶¶ 87 – 95). Similarly, Count II of the complaint is brought under 18 U.S.C. § 981(a)(1)(A), which requires "tracing" assets to a

crime. The "source of funds" questions indisputably go to the merits-issues of "proceeds" and "tracing." As such, they are not within the scope of special interrogatories.

> **4.    State whether you have been indicted in the United States and if so, state the offense/offenses for which you were indicted, the date of the indictment and the district in which you were indicted.**

This question also bears solely on fugitive-status. *See* 28 U.S.C. § 2466(a)(1)(A) (whether a person has "notice or knowledge of the fact that a warrant or process has been issued for his apprehension"). Nonetheless, several claimants have already acknowledged that they were indicted in the *Criminal Action*, and the others (except for Mona Dotcom, who was not indicted) now acknowledge the same.

> **5.    State whether or not you have agreed to come to the United States to stand trial for any offense/offenses for which you were indicted in the United States.**

> **6.    State whether or not you are currently confined or held in custody in any jurisdiction.**

These questions go solely to the issue of a Claimant's fugitive-status. *See* 28 U.S.C. § 2466(a)(1)(B) (whether a person "declines to enter or reenter the United States") & (2) (whether a person is "confined or held in custody in any other jurisdiction"). Thus, these questions are outside the scope of special interrogatories.

*    *    *

In addition to the questions asked of all Claimants, the government also asked Kim Dotcom to answer the following:

> **8.    State your ownership interest in MegaUpload Limited, Megapay Limited, Vestor Limited, Megamedia Limited, and Megastuff Limited and all facts upon which you rely to claim ownership.**

This question pertains to information regarding fugitive-status, and in particular, the possible application of 28 U.S.C. § 2466(b) ("Subsection (a) may be applied to a claim filed by a

15

corporation if any majority shareholder, or individual filing the claim on behalf of the corporation is a person to whom subsection (a) applies."). Claimant Kim Dotcom respectfully submits that this question is outside the scope of special interrogatories.

> **9. State whether or not you entered into a prenuptial agreement or any type of contract governing the division of marital property prior to your marriage to Mona Dotcom and if so, explain what the agreement/contract provides.**

This question was asked of both Kim Dotcom and his estranged wife, Mona Dotcom, who also submitted a claim (Doc. 14). Claimant Mona Dotcom answered this question (# 7) in the negative, and that should be sufficient (Exhibit A). There was no prenuptial agreement.

## III. THE COURT SHOULD NOT STRIKE CLAIMS

In a footnote, the government suggests that the Court could strike Claimants' claims under Supplemental Rule G(8)(c)(i)(A) for "failure to respond to the special interrogatories" (Doc. 38, *Govt. Brief* at 4 n.2). Essentially, the government seeks a default judgment based on a purported discovery "failure." Respectfully, the government's reach exceeds its grasp.

The cited rule provides that "the government may move to strike a claim … for failing to comply with Rule G(5) or (6)." FED.R.CIV.P. SUPP. R. G(8)(c)(i)(A). The rule drafters caution, however, that "Not every failure to respond to subdivision G(6) interrogatories warrants an order striking the claim." FEDERAL CIVIL JUDICIAL PROCEDURE AND RULES, Supp. Rule G, Adv. Com. Notes, 2006 Adoption, *Subdivision (8)*, at 333 (Westlaw 2014 rev. ed.). Unlike the cases cited by the government, in which the claimant completely fails to respond or fails to provide complete responses after a protracted period, Claimants timely served responses and made specific objections to particular interrogatories on recognized grounds. Indeed, the rule itself permits a claimant to serve objections. FED.R.CIV.P. SUPP. R. G(6)(b). Therefore, the mere

timely service of objections should not constitute a "failure" that would be grounds for striking a claim.

Moreover, as shown above the objections are not frivolous. When objections are substantially justified under Rule 37, the Court must take that into account when deciding whether any sanction is warranted—let alone default judgment. Under Rule 37, an objection would be "substantially justified" if there is a "genuine dispute" or "if reasonable people could differ" as to the appropriateness of the objection. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (interpreting Rule 37). Even if the Court overrules the objections (which it should not), Claimants respectfully submit that they are substantially justified.

Nor has the government come close to meeting the Fourth Circuit standard for entering default judgment under Rule 37. When determining what sanctions to impose under Rule 37, a district court must consider four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (*en banc*)). Under the Rule 37 analysis, striking claims—essentially entering default judgment—is not warranted for discovery "failures" except in the most egregious cases involving bad faith, persistent disobedience, or contumacious misconduct. *See Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) (vacating default judgment sanction and remanding for consideration of other sanctions). The Court must consider imposition of the **least severe sanction** that is appropriate. *Id.* at 40-41. To be sure, Supplemental Rule 8(G)(c)(i)(A) might not require that the Court apply the "general approach to discovery sanctions

under Rule 37." FEDERAL CIVIL JUDICIAL PROCEDURE AND RULES, Supp. Rule G, Adv. Com. Notes, 2006 Adoption, *Subdivision (8)*, at 333 (Westlaw 2014 rev. ed.). Nonetheless, the general approach under Rule 37 cannot be wholly discarded, either.

Claimants respectfully submit that the government has not shown grounds under Rule 37 or Supplemental Rule (G)(8)(c)(i)(A) for striking their claims.

## CONCLUSION

For the reasons argued above, Claimants respectfully request that the government's motion to compel be denied.

Dated: December 8, 2014              Respectfully submitted,

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-2604
craig.reilly@ccreillylaw.com
*Counsel for Claimants*[3]

---

[3] ***Claimants:*** Kim Dotcom, Mona Dotcom, Julius Bencko, Sven Echternach, Mathias Ortmann, Finn Batato, Bram van der Kolk, Megaupload Limited, Megapay Limited, Vestor Limited, Megamedia Limited, and Megastuff Limited.

| *Of Counsel for Claimants Kim Dotcom and Megaupload Limited:* | *Local Counsel for Claimants Julius Bencko and Sven Echternacht:* |
|---|---|
| Ira P. Rothken (*pro hac vice*)<br>Jared R. Smith (*pro hac vice*)<br>ROTHKEN LAW FIRM<br>3 Hamilton Landing<br>Suite 280<br>Novato, CA 94949<br>TEL (415) 924-4250<br>FAX (415) 924-2905<br>ira@techfirm.net<br>jared@techfirm.net | David B. Smith<br>SMITH & ZIMMERMAN, PLLC<br>108 North Alfred Street<br>Alexandria, Virginia 22314<br>TEL (703) 548-8911<br>FAX (703) 548-8935<br>dsmith@smithzimmerman.com |
| William A. Burck (*pro hac vice*)<br>Derek L. Shaffer (*pro hac vice*)<br>Stephen M. Hauss (*pro hac vice*)<br>QUINN EMANUEL URQUHART<br>    & SULLIVAN LLP<br>777 6th Street NW, Suite 1100<br>Washington, D.C. 20001<br>TEL (202) 538-8000<br>FAX (202) 538-8100<br>williamburck@quinnemanuel.com<br>derekshaffer@quinnemanuel.com<br>stephenhauss@quinnemanuel.com | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2014, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users, including:

>Dana J. Boente
>UNITED STATES ATTORNEY
>Karen Ledbetter Taylor
>ASSISTANT UNITED STATES ATTORNEY
>United States Attorney's Office
>Justin W. Williams U.S. Attorney's Building
>2100 Jamieson Avenue
>Alexandria, Virginia 22304
>Karen.Taylor2@usdoj.gov
>*Attorneys for the United States*

>/s/ Craig C. Reilly
>Craig C. Reilly, Esq. (VSB # 20942)
>111 Oronoco Street
>Alexandria, Virginia 22314
>TEL (703) 549-5354
>FAX (703) 549-5355 (NEW)
>craig.reilly@ccreillylaw.com
>*Counsel for Claimants*