UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      *Plaintiff*,<br><br>v.<br><br>ALL ASSETS LISTED IN ATTACHMENT A, *etc.*,<br><br>             *Defendants in Rem.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

                 No. 1:14cv969
                 (LO / TRJ)

**BRIEF IN SUPPORT OF
CLAIMANT MONA DOTCOM'S <u>EMERGENCY</u> MOTION
FOR AN EXTENSION OF TIME TO RESPOND
TO THE GOVERNMENT'S MOTION TO STRIKE HER CLAIM**

Pursuant to Rules 56(d) and Supplemental Rule G of the Federal Rules of Civil Procedure, and Local Civil Rule 7 of the United States District Court for the Eastern District of Virginia, Claimant Mona Dotcom has made an emergency motion to defer or for an extension of time to respond to the government's motion to strike her claim for lack of standing. The motion to strike attempts to do far more than challenge her threshold standing—indeed, the motion fails even to address her standing under the standard applicable at this stage of the case. Instead, in its haste, the government conflates "standing" and "ownership"—a frequently made mistake[1]—and makes a voluminous, free-wheeling, fact-intensive, and expert-supported motion for summary judgment ***on the merits***—not threshold standing. Moreover, the motion depends almost entirely on the application of New Zealand matrimonial law and speculatively seeks adjudication of numerous fact issues going to the merits that are wholly unrelated to threshold standing.

---

[1]  Stefan D. Cassella, *Asset Forfeiture Law in the United States*, §§10-2 & 10-2(a) at 408-11 (2d ed. 2013) (explaining that "[s]tanding and ownership are separate concepts that are often confused in the case law").

As set forth in the *Declaration of Craig C. Reilly* submitted herewith, and as argued herein, the Court should either defer the motion to strike as premature, or at least extend the time for Mona Dotcom to respond to the motion to strike to, and including, January 30, 2015.  The government may then file a reply, and the motion to strike may be set for a hearing after that.

### STATEMENT OF THE CASE

In January 2012, the United States filed a criminal action in this District against Kim Dotcom, and others, for alleged criminal copyright infringement.  *United States v. Kim Dotcom, et al.*, No. 1:12-cr-00003-LO (E.D. Va. filed Jan. 5, 2012) ("*Criminal Action*").  The *Criminal Action*, which included a claim for criminal forfeiture, is still pending.  **Mona Dotcom has not been indicted or implicated in the alleged criminal conduct**.

Over two years later, the government commenced this civil forfeiture action *in rem* against assets seized in New Zealand purportedly because those assets were "proceeds" of the "massive" worldwide conspiracy to commit criminal copyright infringement in violation of the laws of the United States that had been alleged in the still-pending *Criminal Action* (Doc. 1).  Despite having waited over two years to commence this action, the government has constantly urged—and still urges—that the Court act in great haste because New Zealand, which has restrained the assets now at issue, has determined to release those assets in the near future.  These time-constraints are due solely the government's failure to act over the last two years, not dilatory action by Claimants, who have been vigorously and timely asserting their legal rights within the bounds of the law in both countries.  Any time-urgency now felt is fully the fault of the government.

### *Mona Dotcom's Claim Was Duly Filed*

Under Supplemental Rule G(5)(a), those Claimants who have been indicted in the *Criminal Action* duly filed claims to their assets (Doc. 3 – 9) ("Indicted Claimants").[2]  Mona Dotcom, the estranged wife of Kim Dotcom, who is separated from and divorcing him, timely filed her own claim, claiming her marital interest in certain assets under New Zealand law (Doc. 14).  The government makes no argument that Mona Dotcom's claim was untimely.

Moreover, in full compliance with Supplemental Rule G(5)(a), Mona Dotcom's claim, which was signed under oath, identified herself as the claimant, identified the specific property she claimed, and stated the basis of her interest in each item (Doc. 14).  The government does not contend otherwise.

### *Claimants' Motion to Dismiss*

Claimants also responded to the complaint by filing a motion to dismiss, demonstrating, *inter alia*, that the Court lacked jurisdiction and the alleged activity at the very core of this action and the *Criminal Action*—"secondary copyright infringement"—*is not a federal crime* (Doc. 19 & 20).   On the government's motion (Doc. 31), an order was then entered deferring the government's opposition to Claimants' motion to dismiss (Doc. 32).  New dates for the filing of the government's opposition and the hearing have not been set.

### *The Government Serves Overbroad Special Interrogatories*

The government also served special interrogatories under Supplemental Rule G(6)(a) on September 24, 2014.  Claimants, including Mona Dotcom, served objections and responses on the agreed-upon due-date, October 24, 2014.

---

[2]   The "Indicted Claimants" are:   Kim Dotcom, Julius Bencko, Sven Echternach, Mathias Ortmann, Finn Batato, Bram van der Kolk, Megaupload Limited, Megapay Limited, Vestor Limited, Megamedia Limited, and Megastuff Limited.

The government then moved to compel further answers only from the Indicted Claimants (Doc. 36 & 38), which the Indicted Claimants opposed (Doc. 44).  That motion was granted in part and ***denied in part*** (*Order*, Doc. 56).  Among the specific rulings made by the Magistrate Judge was that no Claimant had to answer any "source of the funds" questions because those went to the merits and were outside the scope of Supplemental Rule G(6)(a).  Pursuant to a consent motion (Doc. 58), the due date originally set for supplemental responses (December 23, 2014) was then extended by the Court to December 30, 2014 (Doc. 59).  The Indicted Claimants timely filed their supplemental responses.

Importantly, in the motion to compel, the government did not challenge the sufficiency of Mona Dotcom's responses or the validity of her objections—in fact, ***no motion to compel was filed against her***.  Moreover, in the moving papers to compel supplemental responses from the Indicted Claimants, the government stated that Mona Dotcom "also objected to the special interrogatories, ***but unlike the [Indicted Claimants], has mostly answered the interrogatories while preserving her objection***" (Doc. 38, at 2 n.1 (emphasis added)).  Yet now, the government speciously tries to find fault with her responses (Doc. 60, *Govt. Br.* at 12-13, 21-22 & Doc. 60-3).  Such back-tracking cannot be countenanced.

### *The Government Times the Second Motion to Strike to Hamstring Mona Dotcom*

In mid-November, the government also filed a motion to strike the Indicted Claimants' claims under the fugitive disentitlement statute (Doc. 37 & 39), which they have opposed (Doc. 45 & 46).  The government filed an oversized reply brief (Doc. 48-2), which was allowed and the Indicted Claimants have been given leave to file a supplemental brief (Doc. 53 & 54).  That motion will be heard January 16, 2015 (Doc. 41).  Mona Dotcom was not indicted, and therefore is not a "fugitive."  No relief was sought against her in the government's first motion to strike.

4

In its court-filings made in mid-November, however, the government stated that it "anticipate[d] shortly filing a motion to dismiss [Mona Dotcom's] claims" on unspecified grounds (Doc. 38, at 2 n.1; Doc. 39, at 1 n.1).  But the government did not make that motion "shortly"—instead, the government sat on that motion for *another six weeks*, filing it *after-hours* (5:31 p.m. EST) on December 30, 2014, during the short work-week between the Christmas and New Years holiday weekends (Doc. 60).  The government failed to file a notice of hearing, but in emails confirmed its intention to be heard at the January 16, 2015 hearing.  Thus, the government waited until the last possible business-day for filing a dispositive motion that could be heard on January 16, 2015, and timed the filing for the holidays, when parties and counsel have been traveling and have only short work-weeks during which to respond.

Claimants' counsel immediately (5:53 p.m. EST on December 30, 2014) contacted lead government counsel on the case, inquiring as follows:

> Grant:  I just received via ECF the government's motion to strike the claim of Mona Dotcom.  We will need to consult with Ms. Dotcom and her NZ counsel regarding many substantive points the government raises (including issues of foreign law).  Do you intend to have this heard on Jan. 16, or can we agree upon a briefing and hearing schedule that permits her a reasonable opportunity to be heard in the unusual circumstances of this case?  Please let me know as soon as you can.  Thank you, Craig Reilly

The government did not respond until the next day, refusing this request.  Subsequent good faith efforts by Claimants' counsel to negotiate on an extended briefing schedule were for naught, as the government refused to move the hearing date (even though it still has not filed a notice of hearing).

The government's motion papers are voluminous—comprising several hundred pages of briefing, declarations, legal expert analysis, New Zealand statutes and case law, and other materials (Doc. 60).  Claimants' counsel immediately (6:17 p.m. EST on December 30, 2014)

forwarded the papers to Mona Dotcom and her New Zealand counsel, but received an automatic "out of office" reply message from New Zealand counsel:

> I am away from the office on annual leave until 12 January 2015.  I will respond to your email on my return.

Claimants' counsel stepped up and continued their efforts to contact both Mona Dotcom and her New Zealand counsel, finally reaching one of them on January 5, 2015.  None are presently in the office, and the earliest that they can assist Claimants' counsel is January 14, 2015.

## ARGUMENT

Despite having withheld the motion to strike Mona Dotcom's claim for six weeks and then serving it in the midst of the holidays, and despite having been advised that Mona Dotcom's New Zealand counsel was out of the office until at least January 12, 2015, and despite having raised numerous fact-intensive issues, and despite having submitted a declaration from a purported "expert" in New Zealand law, the government refused to extend her time to respond by even one day.  Instead, the government claimed that the imminent release of the New Zealand assets justified its refusal to consent to an extension.  Mona Dotcom now seeks an extension to January 30, 2015, which should not prejudice the government.

## I.   MONA DOTCOM HAS ADEQUATELY SHOWN HER STANDING AT THIS STAGE OF THE CASE

The government's motion to strike raises numerous factual and legal arguments directed to the merits and ranges far from—indeed, entirely overlooks—the issue of ***threshold standing***.[3] The motion is procedurally and substantively unsound and premature.

---

[3]   As used in this brief, "threshold standing" includes statutory and Article III standing. Considerations of "prudential standing" are narrowly applied in civil forfeiture cases.  Stefan D. Cassella, *Asset Forfeiture Law in the United States*, §§10-3(c) at 418-20 (2d ed. 2013).  None of the articulated bases for requiring an inquiry into "prudential standing"—such as, whether the claimant asserts an interest in seized assets as a crime victim—appear in this case.

A.     THE GOVERNMENT IS MISUSING THIS MOTION

Under Supplemental Rule G(8)(c)(i)(B), the government may move to strike a claim for "lack of standing."  That is what the government purports to be doing.  However, the government must present that motion either as "a motion for judgment on the pleadings" (which is confined to the face of the pleadings), or "after an evidentiary hearing," or "by summary judgment." FED.R.CIV.P. SUPP.R. G(8)(c)(ii)(B).  Ignoring the procedural limitations on its right to move to strike for "lack of standing," the government has presented a voluminous, free-wheeling, fact-intensive, and expert-supported motion for summary judgment *on the merits*—not threshold standing.  Moreover, the merits-issues now raised depend almost entirely on the application of New Zealand matrimonial law.  The motion also speculatively seeks adjudication of numerous fact issues going to the merits that are wholly unrelated to the issue of threshold standing.

In its rush to reach the merits, the government has skipped over threshold standing entirely to attack "ownership" (Doc. 60, *Govt. Br*. at 6-7).  This is a common error:

> Standing and ownership are separate concepts that are often confused in the case law.  There is a substantial overlap between the two concepts, as both deal with the claimant's interest in the defendant property.  But standing and ownership come into play at different stages in the civil forfeiture case and are governed by different bodies of law.

Stefan D. Cassella, *Asset Forfeiture Law in the United States*, §§10-2 at 408 & n.1 (2d ed. 2013); *see also id.*, § 10-2(a)-(b) at 409-14 (explaining the rampant confusion in the case law and lawyers' "imprecise arguments").  This conflation of standing and ownership is particularly problematic when both personal and marital assets are at issue, but only one spouse has been indicted.

Where, as here, a spouse claims an "interest" in marital assets that have been seized, she does not need to prove "the full merits" of her case in order to show her threshold standing:

"It is well established that a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture." At this preliminary juncture, however, the claimant [wife] need not prove the full merits of her underlying claim. All that needs to be shown is a "facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and 'prudential considerations defining and limiting the role of the court.'"

*United States v. One Parcel of Real Property, etc.*, 942 F.2d 74, 78 (1st Cir. 1991) (wife's claim of a "marital equitable interest" in real property under state law established her standing) (citations omitted). Even though that claimed marital interest was later disallowed, the wife nonetheless had standing and was permitted to prove the merits of her claim and rely on the "innocent owner" defense—ultimately prevailing. *Id*. at 78-80. As is shown next in Section I.B., the Fourth Circuit uses the same "colorable interest" test to determine **threshold standing**.

"Ownership" is not necessary to prove threshold standing, only an interest in some or all of the defendant property. *Via Mat Int'l So. Am., Ltd. v. United States*, 446 F.3d 1258, 1263 (11th Cir. 2006) ("Ownership of property that has been seized can be evidence of the existence of an injury that is direct enough to confer standing, but ownership is not required; non-owners, such as bailees or those with possessory interests, can also have injuries resulting from the seizure of property that are sufficient to establish standing."). As the statute and case law also makes clear, **only after** the government has proven that particular property may be forfeited need a person with standing prove her "ownership," as a **merits-issue**, as an element of the "innocent owner" affirmative defense. *See*, *e.g*., *United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1887, 1191 n.3 (9th Cir. 2004) (proving threshold standing and proving ownership and innocent owner affirmative defense are separate showings); *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013-15 (8th Cir. 2003) (error to confuse standing, which is a threshold question, and ownership, which is an element of the "innocent owner" affirmative defense on the merits); *United States v. $557,933.89, More or Less*, 287 F.3d 66, 77-

78 (2nd Cir. 2002) (claimant with standing may prevail, even if not the owner, if government fails to establish forfeitability, because "innocent owner" defense only arises after government has made is case on forfeitability).  Here, the government has simply conflated standing and ownership.

Accordingly, the Court should limit the inquiry at this stage to *threshold standing*, and defer adjudication of the merits—including "ownership"—until those issues are ripe after pleading and discovery.  The Court, therefore, should treat the government's motion to strike as a motion for judgment on the pleadings under Supplemental Rule G(8)(c)(ii)(B), confined to the face of the complaint and Mona Dotcom's claim, and deny the motion without prejudice to the government's reassertion of its merits-contentions at the appropriate time.  *See United States v. $37,281.00 in U.S. Currency*, 2007 WL 2710706, *4 (W.D.N.C. 2007) (denying motion to strike for lack of standing, without prejudice to renewal as a motion for summary judgment after discovery is complete).  At the very least, if the Court determines that Mona Dotcom's standing is properly the subject of a motion for summary judgment at this stage, the Court should allow additional time to Mona Dotcom to prepare her response as explained in Section III.

## B.    MONA DOTCOM HAS THRESHOLD STANDING

The government strenuously argues for application of the strictest test for standing: "dominion and control" over the claimed assets (Doc. 60, *Govt. Br*. at 7-8, 9-11).  The proper test for *threshold standing* is not "dominion and control," but the nearly universally applied "colorable interest" standard, which "is not high."  Stefan D. Cassella, *Asset Forfeiture Law in the United States*, §§10-3(b) at 416 & n.25 (2d ed. 2013) (collecting and analyzing circuit court cases adopting "colorable interest" standard).  The Fourth Circuit applies the same test:  "In order to contest a government forfeiture action, a claimant must have the Article III standing required for

any action brought in federal court.  In order to establish Article III standing, a claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property." *United States v. Munson*, 477 Fed. Appx. 57, 62 (4th Cir. 2012) (unpublished) (citations omitted). Sister district courts within the Fourth Circuit also apply this test, describing it as "not high" and "undemanding."  *United States v. Bailey*, 926 F. Supp. 2d 739, 760 (W.D.N.C. 2013); *United States v. $50,000.00 in U.S. Currency,* 2014 WL 2575767 (D. Md. June 6, 2014); *United States v. $10,290.00 more or less, in U.S. Currency*, 2014 WL 1017200 (S.D.W. Va. Mar. 14, 2014); *United States v. $307,970.00, in U.S. Currency*, 2013 WL 4095373 (E.D.N.C. Aug. 13, 2013); *United States v. Lot No. 36 of Windsor Park N. Subdivision*, 2009 WL 1795264 (M.D.N.C. June 22, 2009).  Mona Dotcom respectfully submits that this is the applicable standard.[4]

Under this standard, and on this record, Mona Dotcom has a "colorable interest" in each species of assets against which she has made a claim.  First, the assertion of a marital interest in the family residence or other marital property (both real and personal) is sufficient to establish threshold standing, even if later proven wrong when, after discovery, the merits are adjudicated. *One Parcel of Real Property*, 942 F.2d at 78 (wife's claim of a "marital equitable interest" in real property under state law established her standing even if it later failed on the merits as a ground for relief).  Second, even though she is not the titleholder to any of the cars, she claims a marital interest in several of them.  Moreover, whether or not she can drive herself, one or more of the cars may have been a gift to her or purchased for her household and personal use (with a driver provided).  Third, a colorable interest in bank accounts is not established by who put the money

---

[4]   Likewise the government's reliance on the "actual or imminent injury" test for standing is misplaced (Doc. 60, *Govt. Br.* at 4-5, 25-26 (citing *United States v. Lazarenko*, 476 F.3d 642 (9th Cir. 2007)).  The *Lazarenko* decision is an outlier on the current legal landscape, and has not been widely followed.  Stefan D. Cassella, *Asset Forfeiture Law in the United States*, §§10-3(b) at 418 (2d ed. 2013).  It also is factually distinguishable and inapposite, in any event.

in, but who may take the money out:  As a general rule, "a person entitled to withdraw money

from an account at a financial institution has standing to contest the forfeiture of the funds in that

account."  Stefan D. Cassella, *Asset Forfeiture Law in the United States*, §§10-3(b) at 435- (2d

ed. 2013).  Mona Dotcom claims a marital interest in several accounts, and also has testified that

prior to the asset-seizure, she had had access to bank accounts and credit cards (Doc. 60-5,

*Affidavit of Mona Verga Dotcom* (Feb. 28, 2012, Auckland, New Zealand)).  Moreover, she may

have had bank, credit, or debit cards linked to those bank accounts.  Therefore, on the present

record, Mona Dotcom has stated a basis for her threshold standing in the claimed assets.[5]

Finally, the issues of the extent of marital property and the "vesting" of marital rights

cannot be determined on this record, as the government urges (Doc. 60, *Govt. Br.* at 7-9, 16-25).

Those issues are mixed questions of law and fact, and are governed by foreign law—in this case,

the matrimonial law of New Zealand.  Under Rule 44.1, both sides have the right to present "any

relevant material" to prove the content of foreign law.  *See* FED.R.CIV.P. 44.1.  This may include,

*inter alia*, testimony, expert submissions, legal treatises, and statutory law.  9A Wright & Miller,

FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2444 (2008).  Expert submissions, however,

continue to be the "basic mode of proving foreign law."  *Id*. at 344.  In support of its contentions,

the government has submitted the declaration of one of the New Zealand prosecutors working on

this case, Matthew David Downs.  Besides his obvious bias as a prosecutor involved in the case,

his declaration is problematic for at least three other reasons.

---

[5]  The government also misreads and misapplies *Lujan* in its argument.  In that case, the court
held that Article III standing "must be supported in the same way as any other matter on which
the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at
the successive stages of the litigation."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561,
(1992).  The court went on to explain that "[a]t the pleading stage, general factual allegations of
injury … may suffice, for on a motion to dismiss we presum[e] that general allegations embrace
those specific facts that are necessary to support the claim."  *Id*. (citation and quotation marks
omitted).  Thus, even under *Lujan*, a lesser showing is needed to establish ***threshold standing***.

First, Mr. Downs appears to practice primarily criminal appellate law, not matrimonial law.  Thus, the usefulness of his declaration is greatly diluted and his presentation appears to be distorted by the prism through which he views matrimonial law in the course of his practice under the New Zealand Criminal Proceeds (Recovery) Act ("NZ-CPRA"), which is different from the United States regime in critical respects (such as its "reverse onus" provision that arises upon the Crowns' proof of "significant criminal activity").  Thus, Mr. Downs' declaration does not appear "adequate" for the purposes for which it is offered.  9A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2444 at 346-48 & nn.13-14 (2008) (courts insist on "adequate" foreign law expert presentations).   At the very least, however, the obvious weaknesses of this declaration weigh in favor of allowing sufficient time for Mona Dotcom to prepare and present a counter-declaration from her own expert—ideally one who actually practices New Zealand matrimonial law.

Second, Mr. Downs exceeds the role of expert and assumes the mantle of decision-maker, by purporting to apply New Zealand law to the facts of the case.  Under Rule 44.1, a foreign lawyer may provide evidence regarding the *content* of foreign law, not the *application* of it, because the application of foreign law is the sole province of the Court.  9A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2444 at 345-46 (2008).   Therefore, courts frequently disregard opinions about the merits that have been offered in foreign law expert declarations. *Chantier Naval Voisin v. M/Y Daybreak*, 677 F. Supp. 1563, 1567 (S.D. Fla. 1988) (district court not bound by foreign law expert opinions); *Pfizer Inc. v. Elan Pharm. Reaserch Corp.*, 812 F. Supp. 1352, 1360-61 & n.11 (D. Del. 1993) (district may receive evidence of the content of foreign law, but foreign law expert's interpretation and application are disregarded "as usurping the function of this Court").   Conclusory and unsupported assertions of the law and

legal conclusions also should be disregarded.  *Pfizer*, 812 F. Supp. at 1360-61 & n.11.  Likewise, "partisan" presentation of conclusory legal opinions and incomplete presentations may be disregarded.  *E.g.*, *Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185, 1193 (7th Cir. 1985) (citation omitted).  Thus, Mr. Downs' conclusions and opinions about the likely resolution of issues on the merits should be disregarded.

Third, Mr. Downs seems to offer opinions under provisions of NZ-CPRA, which, of course, is not the legal regime that this Court will apply in the motion to strike.  Thus, certain of his opinions may be of no use at all, even if within his area of foreign law expertise.

Similarly, based on New Zealand law, but unsupported by competent Rule 44.1 submissions, the government contends that Mona Dotcom "might" not be entitled to any marital distribution because of purported "offsets" she has already received (Doc. 60, *Govt. Br.* at. 8-9, 11-16).  Respectfully, that issue cannot be determined on this record.  This merits-issue is a fact-intensive inquiry, adjudicated under a framework of foreign law, and the government has offered neither competent proof nor competent expert foreign law declarations in support of its free-wheeling attorney-argument.  This issue cannot be decided on the current record, and at the very least, Mona Dotcom must be given a meaningful opportunity to meet the government's arguments with evidence and expert foreign law analysis.

\*       \*       \*

Therefore, on this record, Mona Dotcom has made a showing of her threshold standing—a "colorable interest" in each of the claimed assets—which the government has not refuted with either competent evidence or proper analysis of foreign law.  The motion to strike should be denied, without prejudice to renewal after further factual development by both sides.  If the Court determines that Mona Dotcom's standing is properly the subject of a motion for summary

judgment at this time, however, the Court should allow additional time to Mona Dotcom to prepare her response as explained in Section III.

## II.     DISCOVERY SANCTIONS ARE NOT APPROPRIATE

The government also argues (without citing the rule) that the Court should strike Mona Dotcom's claim for failure to respond to special interrogatory #8.  The government contends that Mona Dotcom "*refused* to answer the part of Question #8 which asked her the source of the funds and the dates the assets were acquired" (Doc. 60, *Govt. Br*. at 8) (emphasis in original). Based on that, the government contends that she has not, and now cannot, show her standing (*Id*. at 8, 21-22).  That is grossly mistaken.

All Claimants were asked, and objected to, similar "source of the funds" questions, contending that this inquiry went to the merits and exceeded the scope of special interrogatories (*see* Doc. 44, *Claimants' Br. Opp. to Mot. to Compel*, at 14-15).  Specifically, that inquiry pertains to the merits-issue of whether the funds in each account, or that was used to purchase real or personal property, may be "subject to forfeiture" on statutory grounds.  *See* 18 U.S.C. § 981(a)(1).  That statute defines the merits-criteria for forfeiture—such as, whether funds "constitute[] or [have been] derived from proceeds traceable to a violation of" federal criminal statutes or "a conspiracy to commit such offense."  18 U.S.C. § 981(a)(1)(C).  In this case, whether an asset constitutes "proceeds" is a merits-issue inquiry pertaining to Count I of the complaint (Doc. 1, *Complaint*, ¶¶ 87 – 95).  Similarly, Count II of the complaint is brought under 18 U.S.C. § 981(a)(1)(A), which requires "tracing" assets to a crime.  The "source of funds" questions indisputably go to the merits-issues of "proceeds" and "tracing."  As such, they are not within the scope of special interrogatories.

The Magistrate Judge **sustained Claimants' objections to <u>all</u> "source of the funds" questions**.  The government nonetheless now argues that Mona Dotcom "refusal" to respond to a plainly improper special interrogatory was a "strategic choice," and that her "refusal" warrants a finding that Mona Dotcom lacks standing (Doc. 60, *Govt. Br*. at 10, 21).  Such a result would be unjust.

Without citing to the rule, the government essentially contends that the Court could strike Mona Dotcom's claim under Supplemental Rule G(8)(c)(i)(A) "for failing to comply with Rule … G(6)"—that is, strike her claim on the basis of lack of standing because of her "refusal" to respond to special interrogatory #8.  However, the government fails to make the requisite showing of grounds for striking Mona Dotcom's claim as a discovery sanction.

The rules provide that "the government may move to strike a claim … for failing to comply with Rule G(5) or (6)."  FED.R.CIV.P. SUPP. R. G(8)(c)(i)(A).  The rule drafters caution, however, that "Not every failure to respond to subdivision G(6) [special] interrogatories warrants an order striking the claim."  FEDERAL CIVIL JUDICIAL PROCEDURE AND RULES, Supp. Rule G, Adv. Com. Notes, 2006 Adoption, *Subdivision (8)*, at 333 (Westlaw 2014 rev. ed.).  This is not a situation in which the claimant has completely failed to respond, or failed to provide complete responses after being ordered to do so, or failed to comply during a protracted period.  Mona Dotcom (and all Claimants) timely served responses and made specific objections to particular interrogatories on recognized grounds.  Indeed, the rule itself permits a claimant to serve objections.  FED.R.CIV.P. SUPP. R. G(6)(b).  Therefore, the mere timely service of objections should not constitute a "failure" that would be grounds for striking a claim.

Moreover, Mona Dotcom's objections to question #8 were not frivolous.  When objections are substantially justified under Rule 37, the Court must take that into account when

15

deciding whether any sanction is warranted—let alone default judgment.  Under Rule 37, an objection would be "substantially justified" if there is a "genuine dispute" or "if reasonable people could differ" as to the appropriateness of the objection.  *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (interpreting Rule 37).  Not only is her "source of the funds" objection "substantially justified," it is meritorious, as the Magistrate Judge sustained identical objections to identical special interrogatories that the government sought to have overruled.

Nor has the government come close to meeting the Fourth Circuit standard for entering default judgment under Rule 37.  When determining what sanctions to impose under Rule 37, a district court must consider four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective."  *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (*en banc*)).  Under the Rule 37 analysis, striking claims—essentially entering default judgment—is not warranted for discovery "failures" except in the most egregious cases involving bad faith, persistent disobedience, or contumacious misconduct.  *See Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) (vacating default judgment sanction and remanding for consideration of other sanctions).  The Court must consider imposition of the ***least severe sanction*** that is appropriate.  *Id.* at 40-41.  To be sure, Supplemental Rule 8(G)(c)(i)(A) might not require that the Court apply the "general approach to discovery sanctions under Rule 37."  FEDERAL CIVIL JUDICIAL PROCEDURE AND RULES, Supp. Rule G, Adv. Com. Notes, 2006 Adoption, *Subdivision (8)*, at 333 (Westlaw 2014 rev. ed.).  Nonetheless, the general approach under Rule 37 cannot be wholly discarded, either.

16

Accordingly, Mona Dotcom respectfully submits that the government has not shown grounds for striking her claim under either Rule 37 or Supplemental Rule (G)(8)(c)(i)(A).

## III.   THE COURT SHOULD DEFER CONSIDERATION OR EXTEND THE TIME FOR MONA DOTCOM TO PREPARE AND PRESENT HER OPPOSITION

In substance, the government has filed a motion for summary judgment on the merits, not a motion to strike for lack of threshold standing.  Mona Dotcom must be provided relief in order that she may respond to the motion with fact and expert evidence.

Under 56(d), the nonmoving party may ask the Court to defer consideration of a motion for summary judgment or for an extension of time to respond to it.  This Rule provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED.R.CIV.P. 56(d).  Motions for relief under Rule 56(d) are "broadly favored and should be liberally granted in order to protect non-moving parties from premature summary judgment motions."  *McCray v. Maryland Dept. of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014) (citations omitted).  As the Fourth Circuit has recognized, "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." *Id.* at 483.  Thus, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (citations omitted). Such relief is warranted here.

Mona Dotcom respectfully submits that the motion to strike should be deferred until a later stage in the case.  If the Court decides to hear it now, however, she seeks additional time to respond.  Below are itemized numerous issues of fact and foreign law (in ***bold italics***) for which

additional time is required before Mona Dotcom can meaningfully oppose the government's motion:

**Whether a specific item of property is a "separate" or "marital" asset under New Zealand law.** This is mixed question of foreign law and fact. Virginia counsel needs additional time to work with New Zealand counsel to develop the facts to meet this issue, as well as the opportunity to obtain expert foreign law analysis of this issue.

**When did Mona Dotcom's pre-marital domestic "partnership" relationship with Kim Dotcom begin under New Zealand law?** Although Mona Dotcom has stated under oath that the partnership relationship (as recognized by New Zealand law) commenced in November 2007, the government now purports to "impeach" that declaration with unauthenticated hearsay "evidence" given by an FBI special agent who purportedly reviewed certain foreign birth and marriage records. This also is a mixed question of foreign law and fact. Virginia counsel needs additional time to work with New Zealand counsel to develop the facts to meet this issue, as well as the opportunity to obtain expert foreign law analysis of this issue.

**When and how does Mona Dotcom's martial interest "vest" under foreign law?** This is a question of foreign law. Virginia counsel needs additional time to work with New Zealand counsel to obtain expert foreign law analysis of this issue.

**Whether Mona Dotcom has received offsetting property already that would diminish her entitlement to the presumptively equal division of marital assets under New Zealand law.** This is a fact-intensive issue to say the least, and one that must be analyzed entirely under foreign law. The government has offered a lot of hearsay and lawyer-argument to support its contentions, but no competent proof or adequate foreign law information on this issue. Virginia

counsel needs additional time to work with News Zealand counsel to develop the facts to meet this issue, as well as the opportunity to obtain expert foreign law analysis of this issue.

**Whether any (let alone _all_) assets are "tainted" as criminal proceeds.**  This is plainly a merits issue under 18 U.S.C. § 981(a)(1), not an issue of threshold standing.  The government's conclusory assertions and lawyer-argument are not a sufficient basis on which to adjudicate this issue.  The Court must defer this issue under Rule 56(d).

**Whether Mona Dotcom is an "innocent owner."**  This merits-issue arises only after the government has proven its case for forfeiture, which it has not done yet.  The Court must defer this issue under Rule 56(d).

**Whether Mona Dotcom should have been aware of Kim Dotcom's alleged criminal activity.**  Mona Dotcom has already provided sworn testimony that she was unaware of Kim Dotcom's alleged criminal activity (Doc. 60-5, _Affidavit of Mona Verga Dotcom_ (Feb. 28, 2012, Auckland, New Zealand)).  The government simply tries to "impeach" that sworn statement with hearsay and lawyer argument, which is not sufficient.  This merits-issue is not ripe for adjudication.  The Court must defer this issue under Rule 56(d).

As shown above and in the supporting declaration of counsel, the government is prematurely seeking summary judgment on the merits.  Under Rule 56(d), the Court may defer or deny the summary judgment motion, allow additional time to develop and present opposing evidence, and issue any other just order.  Mona Dotcom respectfully submits that the Court should defer all issues for later adjudication, but at least should allow additional time for Mona Dotcom to file her opposition to the motion to strike.  This roughly two-week extension will not prejudice the government, which had waited six weeks before filing the second motion to strike, and more than two years even to file this action.

19

**CONCLUSION**

For the reasons argued above, the Court should defer the government's motion to strike the claim of Mona Dotcom, or at least permit her sufficient time to prepare and present a meaningful opposition.  If the latter relief is offered, Mona Dotcom respectfully requests that the time for her response be extended to and including January 30, 2015.

Dated:  January 6, 2015

Respectfully submitted,
/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-2604
craig.reilly@ccreillylaw.com
*Counsel for Claimants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2015, the foregoing was filed and served electronically

by the Court's CM/ECF system upon all registered users, including:

>            Dana J. Boente
>            UNITED STATES ATTORNEY
>            Karen Ledbetter Taylor
>            ASSISTANT UNITED STATES ATTORNEY
>            United States Attorney's Office
>            Justin W. Williams U.S. Attorney's Building
>            2100 Jamieson Avenue
>            Alexandria, Virginia 22304
>            Karen.Taylor2@usdoj.gov
>            *Attorneys for the United States*


>            /s/ Craig C. Reilly
>            Craig C. Reilly, Esq. (VSB # 20942)
>            111 Oronoco Street
>            Alexandria, Virginia 22314
>            TEL (703) 549-5354
>            FAX (703) 549-5355 (NEW)
>            craig.reilly@ccreillylaw.com
>            *Counsel for Claimants*