IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　　Plaintiff,<br><br>　　-v-<br><br>ALL ASSETS LISTED IN ATTACHMENT A, AND<br>ALL INTEREST, BENEFITS, AND ASSETS<br>TRACEABLE THERETO,<br>　　　　　　　　　Defendants *in rem*. | Civil No. 1:14-cv-969<br><br>Hon. Liam O'Grady |

## ORDER

Before the Court is the claimants'[1] motion to stay this Court's judgments and orders striking their claims and ordering forfeiture. (Dkt. No. 116). The government has opposed the motions and the claimants replied. (Dkt. Nos. 119, 120). The Court dispensed with a hearing because the issues were sufficiently presented in the pleadings and oral argument would not aid the decisional process.

### I. Whether a Stay is Necessary under 28 U.S.C. § 1355(c)

The claimants have moved for a stay pending appeal pursuant to 28 U.S.C. § 1355(c). Section 1355(c) provides:

> In any case in which a final order disposing of property in a civil forfeiture action or proceeding is appealed, removal of the property by the prevailing party shall not deprive the court of jurisdiction. Upon motion of the appealing party, the district court or the court of appeals shall issue any order necessary to preserve the right of the appealing party to the full value of the property at issue, including a stay of the judgment of the district court pending appeal or requiring the prevailing party to post an appeal bond.

---

[1] Claimants include Finn Batato, Bram Van Der Kolk, Julius Bencko, Mathias Ortmann, Sven Echternach, Kim Dotcom, Mona Dotcom, Megaupload Limited, Megapay Limited, Vestor Limited, Megamedia Limited, and Megastuff Limited. *See* Claimants' Mot. for Stay at 1 n.1.

28 U.S.C. § 1355(c).

The claimants argue that the statute's language, specifically the use of the word "shall," requires the Court to enter a stay.

Virtually all courts to consider a motion to stay under § 1355(c), including two Courts of Appeals, have held that the statute does not mandate a stay upon request. *See, e.g., United States v. Various Tracts of Land in Muskogee & Cherokee Counties*, 74 F.3d 197 (10th Cir. 1996); *In re All Funds in Accounts in the Names Registry Publishing, Inc.*, 58 F.3d 855 (2d Cir. 1995); *United States v. 2001 Honda Accord*, 3:02–cv–0831, 2003 WL 1339957 (M.D. Pa. Mar. 18, 2003); *United States v. Fourteen Various Firearms*, 897 F. Supp. 271, 272 (E.D. Va. 1995) ("Notwithstanding use of the term 'shall,' the statute does not require entry of a stay") (citation omitted). *See also United States v. $1,026,781.61 in Funds from Fla. Capital Bank*, 2013 WL 781930, at *1 (C.D. Cal. Mar. 1, 2013) (noting that most other courts do not interpret § 1355(c) as mandatory); *United States v. 1993 Bentley Coupe*, 1997 WL 803914, at *1 (D.N.J. Dec. 30, 1997) ("This Court finds that the Third Circuit would follow the Second and Tenth Circuits in concluding that the word shall in § 1355(c) does not mean that courts must grant a stay upon an appellant's request").

The case cited by the claimants, *United States v. $14,876.00 in U.S. Currency*, No. 97–1967, 1998 WL 37522 (E.D. La. Jan. 29, 1998), does not stand for the proposition that courts must issue a stay upon request. In that case, the government moved for a stay pending appeal after the district court dismissed the government's forfeiture action. The court stated "[t]he plain language of the statute seems to mandate that the Court issue the stay, *if necessary* to preserve the full value of the property at issue." *$14,876.00*, 1998 WL 37522, at *1 (emphasis added).

The court found that a stay was necessary to preserve the full value of the property at issue, a sum of cash, which could easily be "disposed of and dissipated in minutes" by the claimants. *Id.*

Here, the claimants have not shown that a stay or other order is "necessary to preserve the right of the appealing party to the full value of the property at issue." § 1355(c). There does not appear to be any risk that the government will deplete the assets before conclusion of the appeal. The government states that liquidation of the assets, which are located in New Zealand and Hong Kong, is "simply not possible until the appeal in the United States is final." Pl.'s Opp'n at 3. The government also states it has been informed by legal authorities in Hong Kong that this Court's forfeiture order will not be enforced until the appeal has been resolved. *Id.* Likewise, the government represents that according to crown counsel in New Zealand, the property cannot be disposed of without consent until the conclusion of the appellate process. *Id.* at 3-4.

The claimants do not refute the government's assertions. The Court therefore concludes that the claimants have not shown a stay is mandatory or necessary to preserve the full value of the property pending appeal. *See United States v. Approximately $25,829,681.80 in Funds*, Nos. 98-civ-1756, 98-civ-2682, 2002 WL 1880709 (S.D.N.Y. Aug. 14, 2002) (denying claimant's motion to stay where government advised that court would retain jurisdiction over the money and government would not distribute the forfeited funds until conclusion of all litigation).

## II. Whether a Stay is Warranted under the Four-Factor Analysis

The claimants argue that even if a stay is not mandatory under § 1355(c), it is warranted under the usual four-factor analysis. In general, courts grant a motion to stay if the moving party shows that: "(1) it will likely prevail on the merits of the appeal; (2) it will suffer irreparable injury if the stay is denied; (3) other parties will not be substantially harmed by the stay; and (4) the public interest will be served by granting the stay." *Fourteen Various Firearms*, 897 F.

Supp. at 272 (E.D. Va. 1995) (granting government's request for a stay pursuant to § 1355(c) using the four-factor analysis) (citing *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970)).

*Likelihood of Success on Appeal*

The moving party must make a strong showing that it is likely to prevail on appeal. "However, this standard does not require the trial court to change its mind or conclude that its determination on the merits was erroneous." *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990). "Rather, the court must determine whether there is a strong likelihood that the issues presented on appeal could be rationally resolved in favor of the party seeking the stay." *Fourteen Various Firearms*, 897 F. Supp. at 273.

As the Court recognized in its Memorandum Opinion granting the government's motion to strike certain claimants pursuant to the fugitive disentitlement statute, this case presents facts of first impression. *See* Mem. Op. at 25 (Dkt. No. 81). This factor therefore "weighs in favor of granting a stay because clear precedent from the Court of Appeals does not dictate the outcome of the substantive issue[s] decided by this court and presented by the appeal." *Fourteen Various Firearms*, 897 F. Supp. at 273 (citation omitted).

*No Irreparable Harm if Stay is Denied*

In determining whether a party will suffer irreparable harm if a stay is denied,

> [m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. However, where the failure to enter a stay will result in a meaningless victory in the event of appellate success, the district court should enter a stay of its order.

*Fourteen Various Firearms*, 897 F. Supp. at 273 (internal citations and quotation marks omitted).

The claimants in the instant case raise a number of arguments regarding the injury they will suffer if a stay is not granted. The Court considers these arguments in turn.

First, the claimants contend that absent an immediate stay, they will suffer "irreparable harm to their ability to mount a defense in both their domestic and foreign actions," including extradition proceedings in New Zealand. *See* Claimants' Mem. in Supp. of Mot. for Stay at 13. They cite *United States v. Seventy Thousand Four Hundred and Seventy Six Dollars in U.S. Currency*, 677 F. Supp. 639 (N.D. Cal. 1987) in support of their argument that criminal defendants have a right to use forfeitable funds to "pay reasonable bona fide attorney fees for the defense of [their] criminal actions" when no other source of funds is available. *Seventy Thousand Four Hundred and Seventy Six Dollars in U.S. Currency*, 677 F. Supp. at 646.

The Court must reject this argument in light of the United States Supreme Court's holding in *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989). There, the Supreme Court refused to "recognize an antiforfeiture exception...for the exercise of Sixth Amendment rights." *Caplin*, 491 U.S. at 628. *See also United States v. $1,026,781.61 in Funds from Fla. Capital Bank*, Nos. 09–04381, 09–00716, 2013 WL 781930, at *3 (C.D. Cal. Mar. 1, 2013) (granting government's motion for a stay pursuant to §1355(c) and noting that "if [claimant] is unable to afford criminal counsel, he has a Sixth Amendment right to the appointment of counsel").

Claimants next argue that denial of a stay will prejudice their ability to obtain necessary exculpatory evidence from servers previously used to store Megaupload data. They claim that this data may be deleted by Carpathia Hosting, the server operator, if the claimants do not pay to prevent deletion of the data. However, the servers are not the subject of this forfeiture litigation and will remain unaffected by any stay ordered in this action. Further, it is not clear to the Court that the seized assets are the only source of funds from which the claimants could draw upon to pay for the data.

The claimants also state that they could forever lose items of personal property and they have been and will be denied the "use and enjoyment" of their property in the absence of a stay pending appeal. Claimants' Mem. in Supp. at 14-15 (quoting *United States v. 2001 Honda Accord*, 2003 WL 1339957, at *3 (M.D. Pa. Mar. 18, 2003). Notably, the court in *2001 Honda Accord* denied the government's motion for a stay, but imposed a restriction prohibiting the claimant from disposing of the Honda pending appeal. *2001 Honda Accord*, 2003 WL 1339957, at *4.

In *Fourteen Various Firearms*, the court agreed with the government that it would suffer irreparable harm if a stay were not granted. *Fourteen Various Firearms*, 897 F. Supp. at 273-274. There, the government had shown that if it won on appeal, it would be able to recoup the value of the firearms at issue, but it would likely be unable to recover the firearms themselves, which could have been "stolen, lost, or destroyed" before the appeal was resolved. *Id* at 273.

Here, no similar injury will accrue to the claimants in the absence of a stay. The claimants do not dispute the government's assertions that it cannot dispose of the assets prior to resolution of the appeal. Accordingly, the claimants will suffer no irreparable injury if the stay is denied. This factor therefore does not weigh in favor of granting a stay.

***Substantial Harm to Government if Stay is Granted***

"[I]t appears that, in enacting 28 U.S.C. § 1355(c), Congress has expressed a preference for maintenance of the status quo pending appeal." *Fourteen Various Firearms*, 897 F. Supp. at 274. The government argues that the issuance of a stay will adversely affect the status quo because New Zealand courts will not register this Court's forfeiture order in the event of a stay. Because New Zealand's independent restraints on the assets have expired, this could result in the release of the assets to the claimants. The claimants argue that it is possible the New Zealand

courts would still restrain the assets in the event of a stay. However, the claimants have also maintained that "there is great doubt whether the foreign courts…would enforce this Court's forfeiture judgment." Claimants' Mem. in Supp. at 8.

In any event, the claimants do not dispute the assertion that if the assets in New Zealand were released to them, they would dispose of the assets before conclusion of the appeal. Given the substantial chance that the assets could be released and disposed of if a stay is granted, the government has shown that it will suffer substantial harm in the event of a stay.

***The Public Interest***

The claimants argue that the public interest weighs in favor of granting a stay. First, they assert that a stay could permit Megaupload to arrange for the return of data on the Carpathia servers belonging to innocent third parties. Again, it is unclear why a stay of forfeiture of the assets at issue in this action, none of which include the Carpathia servers, would affect the claimants' ability or the third parties' ability to recover whatever data they may have stored on the servers.

The claimants also argue that a stay would honor the principle of international comity. As discussed in its prior Memorandum Opinion, this Court accords great respect to the courts in New Zealand and Hong Kong. *See* Mem. Op. at 28-30 (Dkt. No. 81). Importantly, this Court has already determined that its order of disentitlement would not unduly interfere with litigation occurring in New Zealand or Hong Kong. *Id.* The claimants have presented no new arguments to convince the Court that the subsequent orders of forfeiture will interfere with litigation occurring in those countries.

The public interest will not be served if either party is able to dispose of the property prior to resolution of the appeal. If the motion for stay is granted, the claimants may be able to dispose of the assets. Accordingly, the fourth factor does not weigh in favor of granting a stay.

### III. Conclusion

For the foregoing reasons, the Court finds that a stay pursuant to 28 U.S.C. § 1355(c) is neither necessary under these circumstances nor is it warranted under the usual stay analysis. Therefore, it is hereby ORDERED that

the motion to stay (Dkt. No. 116) is DENIED.

Date: May 29, 2015

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge