IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALL ASSETS LISTED IN ATTACHMENT A, AND ALL INTEREST, BENEFITS, AND ASSETS TRACEABLE THERETO,<br><br>Defendants *in Rem.* | Civil Action No.: 1:14-cv-969<br><br>The Honorable Liam O'Grady |

**UNITED STATES' REPLY TO OPPOSITION TO
MOTION TO STRIKE CLAIM OF MONA DOTCOM
AS TO REAL PROPERTY KNOWN AS 5H THE PROM,
<u>COATESVILLE, AUCKLAND 0793, NEW ZEALAND</u>**

I.   <u>The Motion to Strike is Procedurally Correct</u>

The United States brought its motion to strike pursuant to Supplemental Rule G(8)(c)(i)(B), Federal Rules of Civil Procedure, which provides the government may move to strike a claim or answer for lack of standing at "any time before trial." The rule further provides that the motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Rule G(8)(c)(ii)(B). Although claimant contends the motion is for "summary judgment on the merits" and thus requires discovery, Dkt. #134 at 7, this ignores the language of the rule allowing simply a hearing to determine whether the claimant can establish standing by a preponderance. Indeed, the Advisory Committee Notes explain that "[a] claimant who lacks standing is not entitled to challenge the forfeiture on the merits." Thus, there is no requirement that merits discovery take place prior to

a determination of a motion to strike for lack of standing. Rather, a court may hold an evidentiary hearing on the issue of standing wherein the claimant has the burden.

> II. Standing May Be Raised More Than Once Since It Must Be Maintained Throughout the Forfeiture Proceeding

Claimant contends that because the Court previously found her to have a possessory interest in real property known as 5H The Prom, Coatesville, Auckland 0793, New Zealand, (hereinafter "PROPERTY 2"), the Court cannot revisit the issue even though the facts supporting the finding have changed. Dkt. #134 at 8. The caselaw does not support claimant's position. *See, e.g., United States v. $410,000.00 in U.S. Currency,* 2007 WL 4557647, *5 n.4 (D.N.J. 2007) (§ 981(g)(7) expressly provides that a determination that a claimant has standing for purposes of seeking a stay does not preclude the Government from objecting to claimant's standing "at a later juncture in the proceeding").

As *United States v. One 2003 M/V Edgewater Vessel*, 2015 WL 998168, *1 (D.P.R. Feb. 27, 2015) makes clear, a claimant must maintain standing throughout the forfeiture proceeding. "[A] claimant bears the burden of establishing his own constitutional standing at all stages in the litigation . . . otherwise, no case or controversy exists capable of federal court adjudication." *Id.* (quoting *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008)). Claimant attempts to distinguish *One 2003 M/V Edgewater Vessel* by pointing out that the claimant there voluntarily relinquished his interest when he filed an insurance claim. Dkt. # 134 at 8. This is a distinction without a difference. The point remains: standing must be maintained throughout the case. In this case, as in *One 2003 M/V Edgewater Vessel*, the claimant lost standing through subsequent behavior. The same occurred in *United States v. Premises . . . .118 Keller Street*, 2011 WL 4067731, *2 (W.D.N.Y. Aug. 22, 2011) (court granted motion to dismiss claim of owner who transferred property to third party after filing his claim), *rpt. and*

*recommendation adopted*, 2011 WL 4067778 (W.D.N.Y. Sep. 13, 211). Thus, Claimant's attempt to distinguish *118 Keller Street* because the claimant there agreed to the dismissal is of no moment.

### III. Kim Dotcom's Conveyance is Obviously Void

Claimant now contends she has an ownership interest in PROPERTY 2 by virtue of the conveyance from Kim Dotcom on February 26, 2015, which conveyance was accepted by a New Zealand court on February 8, 2018. Dkt. 134 at 12. However, Kim Dotcom had no ability to transfer the property to anyone because the property was subject to this Court's jurisdiction at that time. *See* Complaint filed July 29, 2014, Dkt. #1. *United States v. Real Property ... 113 Maynard Ave. N.W.,* 2011 WL 6016896, *8 (W.D. Mich. Dec. 2, 2011) (claimant must be an owner as defined in § 983(d)(6) to have "statutory standing"; mere legal title is not sufficient because § 983(d)(6) excludes nominees; person who acquires an interest via a fraudulent transfer is not an owner under state law). Furthermore, the property was and <u>remains</u> subject to restraints in the New Zealand courts, as has been acknowledged by Mona Dotcom's counsel in New Zealand. *See* Dkt. #131, at Attachment #1 (Letter from Mona Dotcom's barrister Jo Hosking in Civ: 2014-404-001272 TWENTIETH CENTURY FOX FILM CORPORATION & ORS v DOTCOM & ORS).

Similarly, a drug dealer's attempt to quitclaim land to his son to evade forfeiture conveyed only "nominal, voidable title" in *United States v. Certain Real Property Located at River Road*, 839 F. Supp. 1, 2-3 (D. Me. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994). "The entire transaction is a facially transparent sham, which the Court FINDS was concocted by [defendant] to evade the onus of the forfeiture law as he felt the noose drawing close about him and his property". *Id.* at 2. The same can be said in this case. *See also United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1192 (9th Cir. 2004) (that a claimant has

title to the property is not sufficient if, as a matter of state law, the title was obtained pursuant to a fraudulent transfer); *United States v. $100,000 in U.S. Currency,* 2014 WL 1330845, *3 (S.D. Fla. Mar. 28, 2014) (nominees who do not exercise dominion and control do not have standing); *United States v. Johnston*, 13 F. Supp. 2d 1316, 1317 (M.D. Fla. 1998) (transfer of property to corporation in which defendant had no interest, but which his wife controlled, "was a complete and utter sham, designed to defeat the interest of the United States in the forfeited property").

In fact, the sham nature of the Dotcoms' submissions is typified by Kim Dotcom's tweet following his departure from PROPERTY 2 (almost immediately after the government's filing):



Page 4 of 9

    IV.    <u>Claimant Admitted She Lost Possession of the Property and Has Further Admitted that She Has Never Exercised Dominion or Control over PROPERTY 2</u>

Claimant admitted in her Affidavit in Support of Opposition to the Government's Second Motion to Strike that she did not live in PROPERTY 2 from October 15, 2017 through April 30, 2018. Dkt. #137 at ¶6. Thus, she did not maintain her possessory interest in the property throughout this litigation and thereby lost standing to contest the forfeiture of PROPERTY 2, as the above-cited cases demonstrate.

As indicated in the government's motion, Mona Dotcom has further conceded through her New Zealand counsel that she does not exercise and, in fact, has <u>never</u> exercised dominion or control over PROPERTY 2.[1] See Dkt. #131, at Attachment #1 (Letter from Mona Dotcom's barrister Jo Hosking in Civ: 2014-404-001272 TWENTIETH CENTURY FOX FILM CORPORATION & ORS v DOTCOM & ORS). She makes absolutely clear that she does not even possess title to PROPERTY 2, since that is what she was seeking (unsuccessfully to date) in the letter.

In the event that this Court does not act, Mona Dotcom will likely continue to seek title to the property in hearings that do not involve any reference to the fact that her claim under New Zealand law is nearly certain to fail in any contested proceeding, *see* Dkt. #131, at 4-5, and

---

[1] The Fourth Circuit has clearly held that the dominion and control test applies in criminal forfeiture proceedings. *See United States v. Bryson*, 406 F.3d 284, 291 (4th Cir.2005); *United States v. Morgan*, 224 F.3d 339, 343 (4th Cir. 2000). The appellate court has similarly employed the dominion and control test in a civil forfeiture proceeding, albeit in an unpublished table decision, and holding, *per curiam*, that a claimant cannot rely on "bare legal title alone." *See United States v. One Lot of Parcel of Ground Known as 1077 Kittrell Street, Norfolk, VA.,* 1991 WL 227792, at *1-2 (4th Cir. Nov. 7, 1991). *See also* Dkt. #90, *at 6-7* (Court's opinion regarding Mona Dotcom's claims); *United States v. $119,030 in U.S. Currency*, 955 F. Supp. 2d 569, 577 (W.D. Va. 2013).

dispose of it (as her counsel has advised that she intends to do), frustrating the multi-year effort to preserve these assets for the benefit of the victims of the Mega Conspiracy.

## V. Candor about Marriage

Mona Dotcom continues to claim that, in her view, her "de-facto" relationship began with Kim Dotcom the virtual moment that they met (November 2007), when Kim was still married to another woman, a friend of hers. In fact, as previously indicated, Kim claimed not to have separated from his first wife Lovely Vargas Vestor until September 2008 and did not divorce her until May 2009. Dkt. #131, at 8. Rather than address these facts, Mona Dotcom now states that she simply "cannot recall exactly what occurred ten years ago in 2008," meaning she is avoiding comment on a November 12, 2008 marriage certificate from the Philippines with both her and Kim Dotcom's signatures stating affirmatively that they were each single. It is particularly telling that she has to refer to July 10, 2009 as her "official marriage date" as if the previous marriages could be discounted as somehow "unofficial" or irrelevant. Surely, the timing of events has direct relevance to the nature and validity of the marital relationship and the property that can be obtained at its dissolution. When the government asked for the place and date of her marriage to Kim Dotcom, it did not use qualifiers, such as "official," "real," "valid," or "most recent." *See* Dkt. #131, Attachment #4, at 3.

Mona Dotcom and her now-former husband appear to have withheld these plainly relevant facts from this Court, the authorities in the Philippines and Hong Kong, the U.S. Court in Guam to whom Kim Dotcom sought a divorce from his first wife while still married to Mona, and to the New Zealand courts. In fact, the New Zealand legal opinion provided in response to the government's motion suggests that the date of the marriage is mostly irrelevant to her analysis. Dkt. #136, at ¶ 44. The reason is striking: "It is clear that they were legally married in

Hong Kong on July 10, 2009." *Id.* Given that Ms. Peart nowhere in her affidavit provides any expertise in marital law in Hong Kong or the criminal law in any country involving either perjury or bigamy and the validity of marriage, this statement is particularly damning to her purported conclusion.

In fact, numerous questions are raised by multiple marriages in multiple countries. For instance, was Lovely Vargas Vestor aware of her husband's marriage to her close friend Mona in 2008, a year before she obtained a divorce and a one-time payment of $100,000 from Kim Schmitz/Vestor/Dotcom? Did Kim Schmitz/Vestor/Dotcom tell her that he had made millions of dollars from Megaupload during their marriage and that she may have been entitled to much more than the $100,000 he gave her? Does she have a potential fraud case against her former husband in the Philippines, Hong Kong, New Zealand, or the United States? Did Lovely Vestor knowingly participate in the marriage fraud scheme or in the omission to the American court? Does she know that she may be able to bring charges against both claimants under Philippine law? Regardless of the legal impact of the claimants' lack of candor, these authorities should have been told the truth before they were asked to rule on matters before them and there clearly could be an impact from the failure to do so.

As suggested in its initial briefing, the United States would ask, in the event that the Court does not dismiss Mona Dotcom's claim to PROPERTY 2, that the Court, at a minimum, renew consideration of the government's Motion to Compel Complete Responses to Special Interrogatories by Mona Dotcom or consider other appropriate sanctions.

Conclusion

The sequence of events demonstrates that Claimant did not maintain possession nor exercise dominion and control of the property throughout the litigation and, thus, she is without standing to contest the property's forfeiture. *See* 18 U.S.C. § 983(d)(6)(B) (an owner does not include "(iii) a nominee who exercises no dominion or control over the property."). *United States v. Munson*, 477 Fed. Appx. 57, *8, n.11 (4th Cir. 2012). Thus, her claim should be stricken.

Respectfully submitted,

Tracy Doherty-McCormick
Acting United States Attorney


By:     /s/
Jay V. Prabhu
Karen Ledbetter Taylor
Assistant United States Attorneys
Attorneys for the United States of America
United States Attorney's Building
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703.299.3700
Fax: 703.299.3981
Email Address: Jay.Prabhu@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of May 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/
Jay V. Prabhu
Assistant United States Attorney
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703.299.3700
Fax: 703.299.3981
Email Address: Jay.Prabhu@usdoj.gov